[Crim. No. 2135. First Appellate District, Division One.—December 31, 1940.]

THE PEOPLE, Respondent, v. FRANK MURRAY, Appellant.

Raine Ewell for Appellant.

Earl Warren, Attorney-General, and William F. Cleary, David K. Lener and Dennis Hession, Deputies Attorney-General, for Respondent.

KNIGHT, J.—The appellant, Frank Murray, was found guilty by a jury on two informations charging him with the crime of receiving stolen goods, and with five prior convictions of felony. The stolen goods consisted of two portable typewriters which he sold for $10 each. The prior convictions were admitted. The first was for robbery (a federal offense) ; the second was for burglary under the state law ; the third was apparently for some federal offense not specified in the accusation ; and the fourth and fifth were for violations of the narcotic laws, one federal and the other state. The infor-

mations were consolidated for trial, and it appearing that the crimes involved in the first and second prior convictions were among those specified in section 644 of the Penal Code, appellant was adjudged an habitual criminal, and as such sentenced to life imprisonment in the state prison. The appeal in each case was taken from the judgment and order denying the motion for new trial. The first point presented for consideration relates to the sufficiency of the evidence, the contention appellant makes in this behalf being that the verdicts and judgments are contrary to the evidence and the law. There is no merit in the contention.

Among the facts and circumstances established by the prosecution were the following: During the month of December, 1939, John Jackson, presumably under twenty-one years of age, and Thomas Ryan, operating separately, burglarized a number of residences in San Francisco, wherein they stole much property. They took the fruits of the burglaries to an apartment at 1323½ Octavia Street and turned it over to William Carson, who occupied the apartment jointly with Jackson and Ryan. Carson had served two terms in the state prison, and three in federal penitentiaries, and he stayed in the apartment most of the time. Knowing the criminal means whereby Jackson and Ryan obtained the property, Carson piled it in the closets and behind the curtains in the apartment, and from time to time they proceeded to sell it and divide the money received therefrom. Part of the articles stolen by Jackson and by him turned over to Carson consisted of seven typewriters, about twelve fur coats, and a number of suits of clothes, radios, and suitcases. Two of the typewriters were stolen by Jackson from the homes of Murray F. Eskew and James Mullins. Appellant and Carson had known each other, according to the latter, "five or ten" years, their acquaintanceship having been formed while they were inmates of the penitentiary. Throughout the month of December appellant visited the Octavia Street apartment on at least six or seven occasions, mostly during the evening. On one of the visits Carson told appellant he had some secondhand typewriters, and asked appellant if he knew where he, appellant, could sell them. Without inquiring how or where Carson obtained the typewriters, appellant replied that he believed he could sell them to some of the employees of a coal company where he had formerly worked. Shortly afterwards and on December 22, 1939, appellant called at the coal com-

pany's office and told William J. Powers, an employee therein, that he had a friend who operated a store and was selling out typewriters and radios, and that he could get them cheap. Powers told him to bring in one of the typewriters so that he could examine it, and an hour or two later appellant returned with the typewriter, which Powers purchased for $10. On December 30, 1939, appellant again called at the office and Powers told him that another employee had seen the typewriters and desired to purchase one; and within two hours appellant brought in another typewriter, which he sold to Levitt Brandt for $10. The sales transactions were witnessed by James Maloney and Miss Horton, two other employees, and after selling the typewriters appellant inquired whether any of them would be interested in buying any suits of clothes or fur coats; but when he began talking about these other articles the parties became suspicious and declined to transact any further business with him. In delivering the typewriters appellant was driven to the coal company's office by Jackson in an automobile, which, according to the latter's testimony, had been stolen. In regard to the deliveries Jackson testified that in response to a note he found under the apartment door with appellant's name signed to it, stating he had sale for the typewriters, he took one of the typewriters from the apartment, picked up appellant at the corner of Third and Market Streets, and then drove to the coal company's office; that he waited outside in the car while appellant took the typewriter into the office and sold it; that upon returning to the automobile appellant handed him the money. Jackson further testified that a few days later appellant told him that he could sell a couple more typewriters at the same place, and thereafter the second sale and delivery was made in the same manner.

The testimony concerning the burglaries, the theft of the property, the concealment thereof, and appellant's association with Jackson and Carson, was given by the two just mentioned, the former having been called as a witness for the prosecution, and the latter as a witness for appellant. At the time they testified Jackson was an inmate of Preston state reformatory; and Carson was serving a life sentence as an habitual criminal, based primarily on the criminal acts here involved.

Furthermore, the record shows the following: On the night of January 4, 1940, the police called at the Octavia Street

apartment to arrest appellant, and at first he attempted to prevent them from entering by closing the door against them; but upon entering, the police found therein three fur coats, miscellaneous jewelry, ten or twelve suits of clothes, and a kit of burglar and safe-cracking tools. One of the police officers in testifying as to the circumstances of the arrest gave the house number as "13—1223½ Octavia", but the surrounding circumstances show that it was doubtless the same apartment occupied by Jackson, Ryan and Carson. Jackson testified that he divided the proceeds of the typewriter sales with Ryan and Carson; but following appellant's arrest a police officer asked appellant "how he got the typewriters", and he replied, "Well, the kids are bringing that stuff in by the load, furs, and everything else in there. Everybody else was selling it. I took some of it and took it out and sold it too. I always split fair with them, I always cut it in half and gave them half of what I got for it." ▮ Appellant did not take the witness stand to explain or deny any of the incriminating evidence introduced against him, and therefore, under the provisions of section 13 of article I of the state Constitution such failure was proper subject matter for the jury's consideration. In view of the foregoing evidence there is no legal ground upon which it may be held that the jury was not warranted in finding the defendant guilty in each case.

Section 496 of the Penal Code, upon which the informations were founded, declares in part that "Every person who for his own gain, or to prevent the owner from again possessing his property, buys or receives any personal property, knowing the same to have been stolen . . . " shall be punished as prescribed therein. In each information it was alleged that the typewriter was stolen by Thomas Ryan and John Jackson, and that appellant feloniously, etc., "and for his own gain, and to prevent the owner . . . from again possessing his said personal property", did buy and receive the same from Ryan and Jackson, knowing the same to have been stolen; and the verdicts read: "We the Jury, find the Defendant, Frank Murray, guilty of the crime of Felony, to-wit: Receiving Stolen Property, as charged in the Information." One of the objections appellant makes to the sufficiency of the evidence is that the prosecution failed to prove in the conjunctive as alleged in the information that appellant received the goods for his own gain and to prevent the owner

from again possessing the same. Such objection is answered by the facts already narrated.

 Nor does it matter that the goods were stolen by and that appellant received them from Jackson, rather than from Jackson and Ryan, as alleged in the information. All that the code section requires in this regard is proof that the goods were stolen and that the accused received them, knowing the same to have been stolen; and the broad form of the verdicts rendered necessarily includes an implied affirmative finding on each of the elements of the crime as defined by said code section and as alleged in the information. (*People* v. *DeVaughn,* 136 Cal. App. 746 [29 Pac. (2d) 914].) In the case of *People* v. *Tilley,* 135 Cal. 61 [67 Pac. 42], cited by appellant, a different form of verdict was rendered. By its terms the jury found merely that the defendant was "guilty of receiving stolen property", which the court held was insufficient in that it did not import affirmative findings on all the essential statutory elements of the crime as they were alleged in the information. But in so holding the court went on to say that the verdict would have been sufficient if there had been added thereto the words "as charged"; and such was the form of the verdicts in the present case.

 Two assignments of error are made concerning the trial court's rulings on the admissibility of evidence. Both assignments are general in terms and neither is supported by argument or citation of authority. The first is entirely without merit. The second is directed against a ruling permitting appellant's witness Carson to answer two questions on cross-examination as to whether he "had met" appellant "in the penitentiary". We are satisfied that the ruling does not call for a reversal. The inhibition embodied in section 1025 of the Penal Code to the effect that when previous convictions are admitted they shall not be alluded to during trial "is not basal or fundamental, but only a statutory regulation" (*People* v. *Stennett,* 51 Cal. App. 370 [197 Pac. 372]); that is to say, it is not absolute, and the courts have long since recognized certain exceptions thereto; for example, where the accused offers himself as a witness in the case he is deemed to have waived the protection of the statutory rule, and on cross-examination may be asked as any other witness, whether he has been convicted of a felony; also where the prior conviction is of the essence of the crime with which the defendant is charged and is part of the *res gestae (People* v. *Mc-*

*Farlan,* 126 Cal. App. 777 [14 Pac. (2d) 1066]). It is also held generally that the mere fact that the evidence which is material to the crime charged may disclose a prior conviction, serves as no valid objection to its admission (*People* v. *Mullaly,* 77 Cal. App. 60 [245 Pac. 811]). The situation which brought about the asking of the questions here complained of was this: The principal defense relied upon by appellant before the jury, and now stressed on appeal, was and is that appellant did not know that the typewriters he was asked to sell and the other articles which he attempted to dispose of, were stolen property; and obviously appellant's real purpose in calling Carson as a witness was to prove that fact. Accordingly, on direct examination, Carson testified that none of the stolen property was exposed to appellant's view in the apartment; that he, Carson, made no mention whatever of the suits of clothes or furs; that when he asked appellant if he would sell some typewriters appellant did not ask how or where they had been obtained, nor did he tell appellant. In short, Carson gave his testimony on direct examination in such a manner as to convey the impression that there was nothing in his dealings or association with appellant which could have caused appellant to believe that the property had been stolen. In that situation it was doubtless within the scope of legitimate cross-examination, not only to test the truth of Carson's statement that he had not told appellant that the goods had been stolen, but to show that because of the nature of the past relationship between appellant and Carson appellant must have known that Carson had not obtained the goods by honest means and that in attempting to sell the same, through appellant, he was not engaged in any lawful enterprise. It may be conceded that if the prosecution had attempted to establish the fact of such relationship by its own witnesses and as part of its case, the rule declared by section 1025 would have been violated; but since the direct examination of appellant's witness opened the way for the prosecution, on cross-examination, to go into the matter, no error is shown, even though the cross-examination did reveal that appellant had been an inmate of the penitentiary.

The final point made by appellant that the court erred in denying the motions for new trial includes only matters already discussed and decided.

We are of the opinion, however, that the prosecution failed to comply with certain essential statutory and judicial re-

quirements in laying the proper foundation for a valid adjudication that appellant was an habitual criminal, and therefore that the portion of the judgment adjudging him to be such and sentencing him to imprisonment for life cannot be sustained.

Section 644 of the Penal Code, from which a trial court derives its power to adjudge an accused an habitual criminal, was amended in 1931, and by said amendment a clause was inserted in said code section making actual servitude in a state prison or federal penitentiary for the prior conviction charged a prerequisite to an adjudication that the accused is an habitual criminal; and since the amendment it has become the settled law of this state that in order to invoke the operation of the habitual criminal statute the prosecution in addition to alleging and proving the fact of the prior conviction must allege and prove that the accused has served a term of imprisonment in a state prison or federal penitentiary for the particular felony of which he is charged with having been previously convicted, and that the failure to allege or prove such servitude is fatal to the adjudication, unless it appears from the record in some manner that the accused has admitted having served such term of imprisonment or that the court in its judgment has so found. (*In re Fontino*, 135 Cal. App. 466 [27 Pac. (2d) 413]; *In re McConnell*, 5 Cal. (2d) 436 [55 Pac. (2d) 205]; *People* v. *Birdsell*, 21 Cal. App. (2d) 682 [70 Pac. (2d) 231]; *People* v. *Nicholson*, 34 Cal. App. (2d) 327 [93 Pac. (2d) 223].) The law does not require allegation or proof of imprisonment for the full term; service of part time is sufficient to bring the case within the purview of the statute. (*People* v. *Carkeek*, 35 Cal. App. (2d) 499 [96 Pac. (2d) 132].) The same doctrine has long since been applied in dealing with cases arising under sections 666 and 667 of the Penal Code, which provide also for increased punishment in case of prior convictions of certain offenses, and likewise contain clauses making servitude in a penal institution for the previous offense a prerequisite to the imposition of the increased punishment. (*People* v. *Dawson*, 210 Cal. 366 [292 Pac. 267]; *In re Boatwright*, 216 Cal. 677 [15 Pac. (2d) 755]; *People* v. *Arnest*, 133 Cal. App. 114 [23 Pac. (2d) 812].)

In the present case the clerk's transcript shows that when the informations were filed they contained no charges of prior convictions; that at the time of the arraignment the trial

court, at the request of the district attorney, "ordered the Informations Amended by adding five prior convictions of a Felony"; that on the following day, upon being re-arraigned, appellant pleaded not guilty to the main charges and denied the prior convictions; that a month later, at the opening of the trial and after the jury had been selected and sworn but in the absence thereof, appellant admitted "the five prior convictions of a Felony, as charged in Informations . . . " and the trial then proceeded. Section 969a of the Penal Code provides that when an information is ordered amended to charge prior convictions, the defendant "shall promptly be rearraigned on such information . . . *as amended* and be required to plead thereto" (italics ours). It does not appear from the record that any amended informations were filed. The prior convictions are merely set forth in the transcript under the heading "Prior Convictions"; and they are unsigned and without any introductory or concluding language making them part of the informations. Furthermore, the record does not show that any evidence was offered to prove that appellant served terms of imprisonment for any of said prior convictions nor that he admitted having done so; nor does the judgment contain any finding to that effect; therefore, under the doctrine of the cases above cited, unless it appears that the informations contain appropriate affirmative allegations that as a result of the prior convictions of robbery and burglary appellant served terms of imprisonment, the adjudication that he is an habitual criminal cannot be sustained. The allegations are as follows: "Prior Convictions: I. And he, the said Frank Murray, prior to the commission of the foregoing offense *was received* at San Quentin prison on or about the 7th day of November, 1913, having been convicted in the United States District Court for the Southern District of California, under the name of Ingwal Olson, of the crime of felony, to wit: robbery of personal property of the United States. II. That he, the said Frank Murray prior to the commission of the foregoing offense *was received* at San Quentin Prison on or about the 30th day of November, 1921, having been convicted in the Superior Court of the State of California in and for the County of Santa Cruz under the name of Ingwald Olsen of the crime of felony, to-wit: burglary, second degree, and was thereafter transferred to Folsom prison." (Italics ours.)

The wording of the habitual criminal statute is that "Every person convicted in this State of any felony who shall have been previously twice convicted upon charges separately brought and tried, and who shall have served separate terms therefor in any State prison and/or Federal penitentiary, either in this State or elsewhere", etc. As will be noted, the concluding words of the allegations charging the prior conviction for burglary are that appellant "was thereafter transferred to Folsom prison", from which the inference probably can be drawn that for such conviction appellant served a term of imprisonment. But the allegations charging the prior conviction of robbery are merely that appellant "was received at San Quentin prison . . . having been convicted" of a certain crime; and it is our conclusion that to allege merely that appellant "was received" at the state prison falls far short of being the equivalent of an allegation such as the law requires, that for said conviction he has served a term of imprisonment in the state prison. Assuming that the use of such words as "imprisoned", "incarcerated", or "confined", would be sufficient to satisfy the requirement of the rule, we are of the opinion that to hold that the words "was received" at the prison import that appellant served a term of imprisonment therein would be clearly distorting the meaning of the word "received". True, the clerk's transcript shows that appellant admitted "the five prior convictions of a Felony, as charged in Informations . . . "; but as held in *People* v. *Dawson, supra,* he must be deemed to have "pleaded guilty only to as great a charge as was contained in the informations". In other words, he is entitled to the benefit of the record as thus made. (*People* v. *Willison,* 116 Cal. App. 157 [2 Pac. (2d) 543].) It should be here stated that the point concerning the invalidity of the adjudication that appellant is a habitual criminal was not urged by counsel for appellant; and it should be stated also that in reaching the foregoing conclusion, we have not been unmindful of the fundamental rule that no portion of a judgment of conviction should be nullified for purely technical reasons. But since service of time after previous conviction is made one of the essential elements of the habitual criminal statute, it would be violative of one of appellant's substantial rights to punish him therefor without charging and proving this element of the offense. (See concurring opinion in *In re Boatwright, supra.*) Stated another way, before a sentence of

life imprisonment be upheld, especially in a case such as this where the accused is found guilty of selling stolen goods of small value, it should affirmatively appear that the sentence is supported by a record which conforms to all of the essential requirements of the law.

. It is ordered, therefore, that in each case the judgment of conviction for receiving stolen goods and the order denying the motion for new trial be and the same are and each of them is hereby affirmed; that the additional portions of the judgments adjudging appellant to be an habitual criminal be and the same are hereby annulled, and the trial court is directed to pronounce sentence upon appellant in conformity with section 669 of the Penal Code for the two convictions of receiving stolen goods; and for such purpose the cause is remanded to the trial court.

Peters, P. J., and Ward, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied on January 30, 1941. Gibson, C. J., voted for a hearing.