[Crim. No. 5793.   Second Dist., Div. Three.   Nov. 27, 1957.]

THE PEOPLE, Respondent, v. THOMAS JAMES, Appellant.

Thomas James, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHINN, P. J.—Thomas James was accused by information of a violation of section 667 of the Penal Code (petty theft with a prior felony conviction) in that he took $35 in money and a bottle of whiskey of the value of $5.50, the property of William Aulwes, having previously suffered a conviction of receiving stolen goods, a felony, in Pennsylvania, and having served a term of imprisonment in the state prison therefor. Defendant pleaded not guilty and denied the prior conviction. Trial was to a jury which found him guilty of petty theft with prior conviction of felony. Defendant's motion for a new trial was denied. Probation was likewise denied and James was sentenced to imprisonment in the county jail for the term of one year. He appeals from the judgment and the order denying him a new trial.

The conviction was based upon evidence of the following facts. William Aulwes testified that his son, Bud Aulwes, was the proprietor of the Tower Café, a barroom located at 6211 South Normandie in the city of Los Angeles. Mr. Aulwes was tending the bar on April 11, 1956, while his son was away from the premises. Defendant entered the café at approximately 1 p. m. in the company of a man named Sepulveda who left immediately thereafter. Defendant sat down at the bar, ordered several drinks, and then asked Mr. Aulwes if he could see Bud. Aulwes replied that Bud was out, but would be back in a few minutes.

A delivery of two small packages of liquor was made at the bar. Mr. Aulwes went to the cash register, which was located behind the middle of the bar, and asked the deliveryman if he would take some checks. The cash register contained a few customers' checks, a number of bills of various denominations, some loose change, a $10 roll of quarters and seven $5.00 rolls of dimes. The coins were rolled in brown paper. The bar had an opening with a counter and the counter was hanging up so that a person in front of the bar could walk through the opening and gain access to the cash register.

Mr. Aulwes gave two checks to the deliveryman and then went back to talk to defendant who was the only customer on the premises. He left the cash register open. Defendant asked him where Bud was and Aulwes answered that he knew

where to locate his son. Defendant told Aulwes that he would buy him a drink if he would telephone Bud. After some coaxing Aulwes agreed. Defendant then went to the telephone booth, which was located behind an archway at the rear of the café, and placed a call. After returning to his stool at the bar, he asked Mr. Aulwes whether he was going to telephone Bud. Aulwes went to the booth, called Hank's Place and ascertained that his son had just departed. He could not see the cash register from the telephone booth because of the archway. As he came out of the booth he saw defendant walking from the counter toward the door. There was no one else in the establishment.

Bud Aulwes entered the café in the company of several other men. Defendant asked him if he would take a bet but he refused. Bud testified that defendant was at the bar talking to his father when he arrived, although he also stated that defendant was standing in the middle of the floor drinking beer when he first saw him. Defendant left the premises immediately after speaking to Bud. A few minutes later, both Bud and his father noticed that a fifth bottle of Haig and Haig whiskey, which had been about half full, was missing from the back shelf near the cash register; it had been on the shelf before defendant came in. The elder Mr. Aulwes looked in the cash register and discovered that four $5.00 rolls of dimes and a $10 roll of quarters were also missing.

Lawrence Johnson testified that defendant and Sepulveda had whiled away the morning in his apartment drinking wine. Defendant asked Johnson if he knew a place where he could make a bet. Johnson recommended the Tower Café and offered to write a note to Bud Aulwes for defendant but he did not do so. Defendant and Sepulveda left the apartment at 11:30 a. m. Shortly before 1 p. m., Johnson received a telephone call from defendant. Defendant asked him to come to the Tower Café and make a fast $80, but Johnson refused. Defendant also said something about paying a $17 debt which Johnson owed to Bud Aulwes. Sepulveda returned to Johnson's apartment and defendant came in a few minutes later. James put four or five quarters and twelve or fifteen dimes on a coffee table and told Johnson that he had gone behind a bar and taken the coins out of a drawer. The three men then went to the 62 Club where they had several beers.

Mrs. Aasen, the proprietor of the 62 Club, testified that defendant paid for the drinks with coins, which were probably dimes, and also exchanged $3.00 in dimes for dollar

bills. Bud Aulwes arrived a few minutes later, saw defendant in the company of Johnson and Sepulveda, and telephoned the police.

Officer Peterson of the Los Angeles Police Department was the investigating officer in the case. He testified that he had a conversation with defendant on the afternoon of April 12th at the police station. He asked defendant whether he had taken money from the cash register at the Tower Café and defendant said that he had not taken any. The officer asked James where he obtained the coins he exchanged at the 62 Club and defendant replied that he won the money gambling. Peterson also stated that on April 23d he found a roll of dimes wrapped in brown paper in a vacant lot next to the Tower Café. Johnson had told him the roll was there. The paper used to wrap the coins was described by William Aulwes as being similar to the paper used to wrap the dimes he had in the cash register.

The People introduced in evidence a certified copy of a judgment of the Court of Oyer and Terminer for Bucks County, Pennsylvania, and certified copies of records of the Bureau of Identification of the Eastern State Penitentiary, Philadelphia, Pennsylvania. These documents, together with copies of defendant's fingerprints, established that defendant was sentenced on May 23, 1944, to a term of 18 months to 4 years in the state penitentiary following a plea of guilty to the charge of receiving stolen property, that he was imprisoned from May 23, 1944, until May 22, 1945, and that he was discharged by court order.

Defendant, testifying in his own behalf, denied taking either the money or the bottle of whiskey and denied telling Johnson that he had taken coins from the cash register. He admitted telephoning Johnson from the café, but stated that he asked Johnson to come down and play a game of pool with him while he waited for Bud Aulwes. Johnson refused to come because he owed Bud $17. Defendant stated that he told Johnson not to worry because he had a fast $18 to pick up. He intended to place a $5.00 bet on a horse running in the second race at Santa Anita that afternoon and according to the morning odds a winning ticket would pay $18. When Bud Aulwes returned to the café he asked him whether he would take a bet and Bud accepted the bet. He changed the dimes into dollar bills at the 62 Club because he wanted to use the bills to pay a doctor he was planning to see that afternoon for a physical examination in connection with a new job; the

examination cost $2.50. He had the dimes with him when he left home that morning. On cross-examination he admitted the prior felony conviction.

Defendant has filed a brief in propria persona. It is adequate as a presentation of all the points that could be urged in his behalf. We have made a thorough examination of the record and have discovered no insufficiency of the evidence and no error at the trial.

Defendant argues the following points in his brief: (1) The court erred in permitting the district attorney to refresh Johnson's recollection; (2) There was insufficient evidence to prove that he was guilty of petty theft; (3) There was insufficient evidence to establish that he served a term in a penal institution upon his prior felony conviction, as required by section 667 of the Penal Code.

■ There is no merit to the argument that the court erred in permitting Johnson's recollection to be refreshed by reading his testimony at the preliminary hearing and his signed statement, as urged under the first point. When asked at what time defendant telephoned him on April 11th, Johnson replied that he could not recall. The deputy showed him the transcript of his testimony at the preliminary hearing and asked him whether it refreshed his memory; Johnson replied in the affirmative and resumed his testimony. When asked whether defendant said anything when he placed the coins on the table, Johnson answered that he could not remember. In response to the deputy's questions, he stated that he did not know whether his memory was better at the time of the preliminary hearing than it was at the time of trial, that his memory was no better on April 12th than it was at the time of trial, and that he could not swear that he was telling the truth at the preliminary hearing because he was under the influence of liquor when he had the conversations with defendant. After a reading of his testimony at the preliminary hearing failed to refresh his memory, the deputy showed him a statement he had signed on April 12th, the day following the occurrences he had related in his testimony. Upon being asked whether the signed statement refreshed his recollection, Johnson replied that it did. The witness was permitted to read the transcript and statement over the objections of defendant's attorney.

No error was committed in showing Johnson his previous testimony and his signed statement in an effort to refresh his memory. A witness may refresh his recollection respecting

a fact by anything written by himself or under his direction at a time when the fact was fresh in his memory and he knew that the same was correctly stated in the writing. (Code Civ. Proc., § 2047.) ■ It is a proper procedure when a witness fails to testify to matters previously within his recollection or gives evidence in apparent variance with that previously given. (*People* v. *Durrant,* 116 Cal. 179, 214 [48 P. 75].)

■ The witness' memory may be refreshed by his written memoranda made soon after the event as well as by a transcript of his previous testimony. (*People* v. *Cotta,* 49 Cal. 166.)

■ While Johnson's lapses of memory as to crucial facts and the admission that he was intoxicated on April 11th would have warranted the jurors in viewing his statements with caution, the effect to be given to his testimony was a matter for the determination of the jury. (*People* v. *Parchen,* 37 Cal.App.2d 215, 221 [98 P.2d 1045].)

The second point to be considered is that there was insufficient evidence to show that defendant was guilty of petty theft. The argument cannot be maintained.

■ Theft is characterized as the felonious taking of property which is not one's own. (Pen. Code, § 484; *People* v. *Moorhead,* 104 Cal.App.2d 688, 694 [232 P.2d 268].)

■ In a prosecution for petty theft, the People must prove an unlawful taking and asportation of property of some intrinsic value with the intent to deprive the owner thereof. (*People* v. *Williams,* 73 Cal.App.2d 154, 157 [166 P.2d 63].)

■ Although there was no evidence to connect defendant with the disappearance of the bottle of whiskey other than the fact that he had the opportunity to remove it from behind the bar, there was substantial evidence to justify a finding that he stole $30 in coins from the cash register of the Tower Café. From the fact that the counter and cash register were left open, the jury could properly infer that defendant had the opportunity to take the money. It was a reasonable conclusion from defendant's conversations with Aulwes and Johnson, as related by them, his admissions to Johnson and the fact that he had a quantity of dimes and quarters in his possession shortly after leaving the café, that he enticed Aulwes into making a telephone call so that he could gain access to the cash register while the bar was untended, and that he took the coins from the register while Aulwes was in the telephone booth and could not see him. Defendant calls attention to several minor discrepancies in the evidence against him, for example, that Aulwes and his son

differed as to the precise time when he left the café. ■ However, the resolution of inconsistencies in the testimony of witnesses and the weight to be given to their testimony is a matter for the jury, not for a reviewing court. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People* v. *White,* 35 Cal.App.2d 61, 68-69 [94 P.2d 617], and cases cited.) In our opinion, there was ample evidence to support the jury's verdict.

The final point to be considered is that the evidence was insufficient to show that defendant served a term in a penal institution upon his prior felony conviction as required by section 667 of the Penal Code. The statute provides as follows: "Every person who, having been convicted of any felony either in this State or elsewhere, and having served a term therefor in any penal institution, commits petty theft after such conviction, is punishable therefor by imprisonment in the county jail not exceeding one year or in the State prison not exceeding five years."

As we have already said, defendant was convicted in Pennsylvania in 1944 of the crime of receiving stolen property and was sentenced to the state penitentiary for a term of 18 months to 4 years. Under Pennsylvania law receiving stolen property is a felony. (Title 18, Purdon's Pa. Stats., § 4817; Act of June 24, 1939, P.L. 872, § 817; as amended by the Act of May 21, 1943, P.L. 306, § 1.) The punishment prescribed under that statute is imprisonment for a term "not exceeding five (5) years" or a fine not exceeding $1,000 or both such fine and imprisonment.

Defendant has lodged with this court letters from official sources transmitting a typewritten copy of docket entries made by the Pennsylvania Superior Court subsequent to his sentence on May 23, 1944. Although presented informally the authenticity of the documents is not open to question and they are received and considered as a part of the record. It appears that in 1945 defendant petitioned the superior court for a writ of habeas corpus, alleging as grounds for the issuance of the writ that he had been illegally committed to the state penitentiary. It further appears from our examination of the applicable Pennsylvania cases and statutes that the legal place of confinement for persons convicted of receiving stolen property is not the state penitentiary but the county jail. This is for the reason that the Pennsylvania courts have held that when a statute uses the word "imprisonment" alone, the word refers to "simple imprison-

ment," (*Commonwealth* v. *Reps*, 32 Del.Co. 590, 591), and that, in Pennsylvania, "all persons sentenced to simple imprisonment for any period of time shall be confined in the county jail where the conviction shall take place. . . ." (Title 19, Purdon's Pa. Stats., § 891; Act of March 31, 1860, P.L. 427, § 75; as amended by the Act of June 26, 1895, P.L. 374, § 1.)

In ruling on defendant's petition the Pennsylvania court held that defendant was not entitled to be released from custody and remanded him for proper resentence. On May 22, 1945, it was ordered that he be imprisoned in the Bucks County prison for a period of not less than 18 months nor more than 3 years, the sentence to run and to be computed from the date of commitment, May 23, 1944. On June 7, 1945, the court amended its previous sentences and ordered defendant to be imprisoned in the county jail for a period of not less than 11 months nor more than 23 months, the amended sentence to be computed from May 23, 1944. On July 2, 1945, defendant was released on parole for the remainder of the maximum term of imprisonment.

Defendant earnestly argues that he served two illegal prison terms in Pennsylvania upon the prior conviction and that the requirements of section 667 of the Penal Code have not been met. The argument cannot be maintained. A different question would be presented had defendant been sentenced as an habitual offender under section 644 of the Penal Code, which requires, before an adjudication of habitual criminality can be made, that the accused shall have served separate terms of imprisonment in a state prison or a federal penal institution upon two prior felony convictions. ▆▆ Section 667 merely requires service of a term of imprisonment "in any penal institution." It is unnecessary for the People to allege and prove that the accused was imprisoned for the full term of his sentence; service of a portion of the term is sufficient. (*People* v. *Murray*, 42 Cal.App.2d 209, 217 [108 P.2d 748].) ▆▆ It cannot be doubted that a county jail is a penal institution within the meaning of section 667. (*In re Wolfson*, 30 Cal.2d 20, 26 [180 P.2d 326].) It appears from the documents presented by defendant that he served at least a part of his term in the county jail. He was properly resentenced to a term in the county jail upon proof that he had been erroneously sentenced to the state penitentiary. (*Commonwealth* v. *Reps, supra*, 32 Del.Co. 590, 591, and cases cited.) The offense of receiving stolen property is a felony under Pennsyl-

vania law, and if it had been committed in this state, defendant could have been punished by imprisonment in the state prison. (Pen. Code, § 496, subd. 1.) Therefore, we conclude that defendant served a term in a penal institution upon the prior felony conviction and that he was properly subject to increased punishment upon a conviction for petty theft following his imprisonment for the prior offense. (Pen. Code, § 668.)

The court did not err in denying defendant a new trial.

The judgment and order appealed from are affirmed.

Wood (Parker), J., and Vallée, J., concurred.