Filed 3/22/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RANDY PAUL BUNYARD,<br><br>Defendant and Appellant. | F071846<br><br>(Super. Ct. No. CRL007275B)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County. Harry L. Jacobs, Judge.

Lauren E. Dodge, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Nicholas M. Fogg, Deputy Attorneys General, for Plaintiff and Respondent.

Randy Paul Bunyard (defendant) appeals from an order denying his request/petition to have his felony conviction for second degree burglary (Pen. Code,[1] § 459) redesignated as misdemeanor shoplifting (§ 459.5) and for resentencing thereon (§ 1170.18, subds. (a)-(e)).  The trial court found an attempt to break into a coin-operated soap dispenser in a commercial laundromat did not comport with the commonsense meaning of "shoplifting"; hence, defendant's conviction did not qualify for resentencing.

We hold defendant is eligible for resentencing under section 1170.18, subdivision (a), because his offense constitutes shoplifting as defined in section 459.5.  Defendant is not, however, entitled to an order directing that he be resentenced.  We remand the matter so the trial court can address the issue of dangerousness under section 1170.18, subdivisions (b) through (e).

## FACTS AND PROCEDURAL HISTORY[2]

Just before 7:00 p.m. on January 31, 2012, Sergeant Ceja of the Los Banos Police Department was dispatched to a laundromat on 7th Street.  He heard a banging noise, and found defendant sitting on a chair next to a coin-operated soap dispenser, "messing with it."  Defendant ran when he saw Ceja.  As he fled, he dropped a screwdriver.  Upon being taken into custody and advised of his rights, defendant admitted he was trying to break into the machine.  He said someone had told him that a person had broken into the machine before and gotten money out of it.  Defendant said no one was going to notice $10 or $15 missing from the machine.

Ceja saw damage to the coin-operated machine that was consistent with pry marks and dents.  He confirmed with the laundromat's owner that the machine previously had been broken into.  Although Ceja assumed the damage to the machine was caused by

---

[1]     All statutory references are to the Penal Code.

[2]     The facts of the offense are taken from the preliminary hearing transcript.

defendant, he could not be certain. He did not know how much money actually was in the machine.

Defendant was charged with second degree burglary, in that he unlawfully entered a building with the intent to commit theft (§ 459; count 1), possession of burglary tools (§ 466; count 2), and resisting an officer (§ 148, subd. (a)(1); count 3). It was further alleged he had suffered two prior strike convictions for attempted arson and carjacking (§§ 667, subds. (b)-(i), 1170.12) and had served four prior prison terms (§ 667.5, subd. (b)). On September 26, 2012, defendant pled no contest to count 1 and admitted four section 667.5, subdivision (b) allegations. He was sentenced to a total of 10 years in prison, and was ordered to pay restitution together with various fees, fines, and assessments.[3]

On November 4, 2014, voters enacted Proposition 47, the Safe Neighborhoods and Schools Act (Proposition 47 or the Act), which went into effect the next day. (Cal. Const., art. II, § 10, subd. (a); *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089.) The Act reduced certain felony or wobbler drug- and theft-related offenses to misdemeanors, unless committed by an ineligible defendant. (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108.) Insofar as is pertinent here, the Act added section 459.5, which reclassified as misdemeanor shoplifting certain offenses that previously constituted felony second degree commercial burglary. The Act also provided a mechanism by which a person who, on November 5, 2014, was serving a sentence for a conviction of a felony that would be a misdemeanor under the Act, could petition the trial court for a recall of sentence and request resentencing under the Act. (§ 1170.18, subd. (a).)

On or about January 20, 2015, defendant filed a written request/petition to have his sentence recalled and to be resentenced under section 459.5. A hearing on the

---

[3]     Defendant also received a consecutive eight-month term in a separate case that is not before us on this appeal.

petition was held on May 29, 2015.  The prosecutor argued the petition should be denied, because shoplifting, as defined by Black's Law Dictionary, "requires the theft of merchandise from a store, specifically larceny of goods."  The prosecutor argued the theft of something other than goods and retail items for sale, plus the method of entry into the coin box, did not qualify the offense as a violation of section 459.5, and that it was "akin to a bank robber walking into a bank, making out with less than $950 and calling that a shoplifting just because the bank was open for business."  Defense counsel responded that the definition of shoplifting contained in section 459.5 controlled and that, although defendant broke into a coin machine, the laundromat itself was open for business and defendant took (or intended to take) less than $950.  Counsel argued that if someone was in line at a grocery store and took money out of the cash register drawer while the clerk's back was turned, that would also qualify as shoplifting, so long as the amount taken was less than $950.

The court found the commonsense meaning of shoplifting did not encompass breaking into coin boxes or taking money from the till when the clerk's back was turned. The court also questioned what was meant by the statute's use of "regular business hours."  The court concluded defendant's conduct did not qualify "under any regular definition of shoplifting," and so it denied the request for resentencing.  It explained: "[I]t seems to me . . . that prying open a box with tools, . . . it's an act that entails more than simply lifting goods from a shelf, or for that matter, even tapping the till.  It involves a level of, I won't say violence against the person, but it's a level of a destruction that it seems to me higher than the level required by shoplifting."

### DISCUSSION

"Every person who enters any . . . shop, . . . store, . . . or other building, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."  (§ 459.) Such entry into a commercial establishment constitutes second degree burglary (§ 460, subd. (b)), which can be either a felony or a misdemeanor (§ 461, subd. (b)).

4.

As enacted by voters as part of Proposition 47, section 459.5 provides:

"(a) Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary. Shoplifting shall be punished as a misdemeanor, except that a person with one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290 may be punished pursuant to subdivision (h) of Section 1170.

"(b) Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property."

"The trial court's decision on a section 1170.18 petition is inherently factual, requiring the trial court to determine whether the defendant meets the statutory criteria for relief. For example, to qualify for resentencing under the new shoplifting statute, the trial court must determine whether [the] defendant entered 'a commercial establishment with intent to commit larceny while that establishment [was] open during regular business hours,' and whether 'the value of the property that [was] taken or intended to be taken' exceeded $950." (*People v. Contreras* (2015) 237 Cal.App.4th 868, 892.) We review these factual findings by the trial court for substantial evidence. (*People v. Hallam* (2016) 3 Cal.App.5th 905, 911.)

"On the other hand, we review de novo the trial court's legal conclusion that" defendant's conduct did not fall within the statutory definition of shoplifting. (*People v. Hallam*, *supra*, 3 Cal.App.5th at p. 912; see *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) Because section 459.5 was enacted through the initiative process, "it is the voters' intent that controls. [Citation.]" (*People v. Park* (2013) 56 Cal.4th 782, 796.) " 'In interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. [Citation.] Thus, [1] "we turn first to the

5.

language of the statute, giving the words their ordinary meaning." [Citation.] [2] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] [3] When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citations.]' [Citation.] [¶] In other words, our 'task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent.' [Citation.]" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900-901.) In so doing, we deem voters to have been aware of existing laws and judicial constructions in effect at the time Proposition 47 was enacted. (*People v. Weidert* (1985) 39 Cal.3d 836, 844.) If — but only if — two reasonable interpretations of the statute " ' "stand in relative equipoise," ' " we resolve an ambiguity in favor of lenity, giving the defendant the benefit of every reasonable doubt. (*People v. Soria* (2010) 48 Cal.4th 58, 65.)

Our first task — giving the words of the statute their ordinary meaning as understood by the electorate (*Robert L. v. Superior Court*, *supra*, 30 Cal.4th at p. 901) — "requires looking both at the historical meaning of larceny and at its use in the statute defining the crime of shoplifting." (*People v. Martin* (2016) 6 Cal.App.5th 666, 674, fn. omitted, review granted, Feb. 15, 2017, S239205 (*Martin*).) "California statutorily defines the crime of theft by larceny as the felonious stealing, taking, carrying, leading, or driving away of the personal property of another. (§ 484, subd. (a).)" (*People v. Williams* (2013) 57 Cal.4th 776, 781-782; accord, *People v. Smith* (1896) 112 Cal. 333, 339.) Thus, it " 'is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away.' [Citation.]" (*People v. Vidana* (2016) 1 Cal.5th 632, 639.)[4] Because the statutory definition reflects its English common

---

**4** A trespassory taking is a taking without the property owner's consent. (*People v. Williams*, *supra*, 57 Cal.4th at p. 783.)

law roots (*Williams*, *supra*, at p. 782), it " 'is therefore to be construed by application of common law principles.' [Citation.]" (*People v. Brock* (2006) 143 Cal.App.4th 1266, 1275.)

There can be no doubt that, upon his entry into the laundromat (which was during the business's regular business hours, since it was open 24 hours a day), defendant intended to commit larceny by theft under the foregoing definition. That he intended to take money, as opposed to goods or merchandise, is of no import: "The term 'property' as used in the Penal Code includes personal property such as money, goods, chattels, things in action and evidences of debt. [Citations.]" (*People v. Kozlowski* (2002) 96 Cal.App.4th 853, 865; see § 7, subds. (10), (12).) The taking of money can constitute larceny. (See *People v. Peltin* (1905) 1 Cal.App. 612, 613-614; see also *People v. James* (1957) 155 Cal.App.2d 604, 610 [theft of money as constituting petty theft].)[5] Nor do we believe it matters whether defendant used a tool to effectuate the intended theft or force to attempt to break into the coin box. (See *Chicago & N. W. Ry. v. Durham Co.* (1926) 271 U.S. 251, 258 [breaking open and taking contents of chest in individual's custody has been held to constitute larceny].)

The Attorney General argues, however, that because section 459.5 defines shoplifting, voters would have believed and intended the statute to refer only to the common understanding of that term, viz., the theft of openly displayed merchandise offered for sale in a retail establishment. We disagree.

Subdivision (a) of section 484 consolidated larceny, embezzlement, and obtaining property under false pretenses into the crime of "theft," but without changing the elements of those underlying crimes. (*People v. Vidana*, *supra*, 1 Cal.5th at pp. 640-641;

---

[5] There was no dispute in the trial court that defendant intended to take less than $950.

7.

*People v. Brock*, *supra*, 143 Cal.App.4th at pp. 1274-1275.)[6] In *Martin*, *supra*, 6 Cal.App.5th 666, we concluded that by using the word "larceny" in section 459.5, voters did not intend to include in the crime of shoplifting all forms of theft, but only larceny under its historical definition. (*Martin*, *supra*, at pp. 671, 683.) We observed that the historical definition of larceny is "generally consistent with how legal dictionaries define 'shoplifting' and with how California courts have colloquially referenced the concept of shoplifting in various contexts." (*Id.* at p. 675, fn. omitted.)

While nothing in our current opinion should be read as derogating from what we said in *Martin*, neither should *Martin* be read as suggesting we concluded voters intended *only* the theft of merchandise or goods displayed for sale to constitute larceny for purposes of section 459.5. Had voters so intended, we would expect section 459.5 to specify entry with intent "to steal goods or merchandise openly displayed for sale" or similar explicating language.

Regardless of what legal forms of theft are included in section 459.5's use of "larceny," giving that term a broader scope than merely what is colloquially referred to as a "five-finger discount" (see <http://idioms.thefreedictionary.com/five-finger+discount> [as of Mar. 22, 2017]) furthers voters' intent in enacting Proposition 47. It is readily apparent the Act was intended to lessen punishment for "nonserious, nonviolent crimes like petty theft and drug possession" (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, subd. (3), p. 70), in order "to ensure that prison spending is focused

_____

**6**      Section 484, subdivision (a) provides, in pertinent part: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

on violent and serious offenses . . . ." (*Id.*, § 2, p. 70.)[7] It would make no sense to distinguish, for purposes of misdemeanor versus felony treatment, between the intended theft of merchandise worth $10 to $15 and the intended theft of coins worth $10 to $15, simply because the former is openly displayed and offered for sale and the latter is not.

From the foregoing, we conclude defendant's conduct underlying his second degree burglary conviction would have rendered him guilty of misdemeanor shoplifting, pursuant to section 459.5, had that statute been in effect at the time of his offense. Accordingly, the trial court erred by finding him ineligible for a recall of sentence and resentencing pursuant to section 1170.18. The matter must be remanded for further proceedings pursuant to subdivisions (b) through (e) of section 1170.18.

Defendant requests immediate resentencing, i.e., an order directing the trial court to resentence him pursuant to section 459.5. He acknowledges the trial court did not reach the issue of dangerousness, but claims "there can be no question that [defendant] would be found to pose no such risk."

Subdivision (b) of section 1170.18 requires the trial court to recall defendant's felony sentence and to resentence defendant to a misdemeanor pursuant to section 459.5 "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.[8] In exercising its discretion, the court may consider all of the following: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes. [¶] (2) The petitioner's

---

7    The voter guide can be found online at <http://www.sos.ca.gov/ elections/voting-resources/voter-information-guides/> (as of Mar. 22, 2017).

8    Subdivision (c) of section 1170.18 defines " 'unreasonable risk of danger to public safety' " as "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." Section 667, subdivision (e)(2)(C)(iv) lists a number of so-called "super strike" offenses.

9.

disciplinary record and record of rehabilitation while incarcerated.  [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b); see generally *People v. Jefferson* (2016) 1 Cal.App.5th 235, 242-245.)

Section 1170.18 requires that the determination of dangerous "must be made in the first instance by the trial court; it is not our role to find facts, especially on an incomplete record." (*People v. Contreras*, *supra*, 237 Cal.App.4th at p. 892.)  The record before us contains no evidence concerning defendant's prior criminal history, aside from the prior convictions alleged in the information, and nothing about his performance in prison. Additionally, the dangerousness determination should occur after both the People and the defendant are permitted to address the issue.  (See *People v. Bradshaw* (2016) 246 Cal.App.4th 1251, 1258; *People v. Shabazz* (2015) 237 Cal.App.4th 303, 314.)**9**

## **DISPOSITION**

The order denying defendant's petition for resentencing is reversed.  The matter is remanded to the trial court with directions to find defendant eligible for resentencing

---

**9**     Because there is no guarantee defendant will be resentenced, it would be premature for us to address his claim that any excess custody credits must be applied against his one-year parole period and applicable fines.  (See §§ 1170.18, subd. (d), 2900.5, subds. (a), (c).)  We note, however, that after briefing was completed in this case, the California Supreme Court held that credit for time served does not reduce the parole period mandated by section 1170.18, subdivision (d).  (*People v. Morales* (2016) 63 Cal.4th 399, 403.)  Neither *Morales* nor section 1170.18 says anything about fines, however, and at least two courts have concluded excess custody credits apply to certain fines.  (*People v. Pinon* (2016) 6 Cal.App.5th 956, 966-967 & fn. 7; *People v. Morris* (2015) 242 Cal.App.4th 94, 97, 101-103.)  In the present case, despite the fact defendant's opening brief clearly asserts any excess custody credits should be applied to fines as well as parole, the Attorney General addresses only the issue of parole.  While we could interpret this as a concession on the Attorney General's part (see *People v. Bouzas* (1991) 53 Cal.3d 467, 480), we find it appropriate to permit the parties to address the issue to the trial court in the first instance, should defendant be resentenced.

under Penal Code section 1170.18, subdivision (a), and proceed as specified in subdivisions (b) through (e) of that statute.

_____
DETJEN, J.

WE CONCUR:


_____
GOMES, Acting P.J.


_____
PEÑA, J.

11.