Filed 2/1/16  P. v. Alonzo CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>RAYMOND C. ALONZO,<br><br>        Defendant and Appellant. | B256919<br><br>(Los Angeles County<br>Super. Ct. No. TA130424)<br><br>ORDER MODIFYING OPINION<br>AND DENYING PETITION<br>FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT*

It is ordered that the opinion filed on January 8, 2016, be modified as follows:

At page 2, paragraph 3, "a male Hispanic wearing dark pants and a plaid sweater" is deleted and replaced with "the suspect."

At page 2, paragraph 4, the fourth sentence beginning at line 5 is deleted and replaced with:

> Vasquez, who identified defendant in court, testified that when he stopped the vehicle, he saw that defendant appeared to be nervous, matched the broadcasted description of the suspect—a "male Hispanic wearing dark-colored pants and a gray-and-white plaid sweater"—was "kind of sweaty and avoiding eye contact," and had long hair.

At page 9, paragraph 3, the word "shaved" is deleted from line 2 of the first sentence.

The petition for rehearing is denied.  There is no change in judgment.

_____
*EPSTEIN, P.J.                      WILLHITE, J.                      MANELLA, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B256919 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA130424) |
| v. | |
| RAYMOND C. ALONZO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Paul A. Bacigalupo, Judge.  Affirmed.

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Tita Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Raymond C. Alonzo appeals from the judgment of conviction of unlawful driving or taking of a vehicle with a prior conviction. (Pen. Code, § 666.5.)[1] He raises evidentiary, instructional, and sentencing issues. Finding no prejudicial error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2013, a Toyota Camry belonging to Maribel Espinoza was stolen from a parking lot in Compton. About a week later, the Camry was detected in Paramount by a Los Angeles County Sheriff's patrol car electronic license plate reader. Deputy Ryan Kearns followed the Camry as it headed north on Orange Avenue, past Rosecrans Avenue, to where the road dead ends at the 105 freeway. The Camry went over the curb and stopped on the grassy area beneath the freeway. The driver of the Camry (later identified as defendant) got out, crouched behind the car, ran to some bushes, and headed east into an industrial park. To the east of the industrial park is a trailer park that is separated from the industrial park by a block wall fence. Kearns lost sight of defendant as he ran toward that wall.

Kearns radioed for assistance and broadcasted a description of a male Hispanic wearing dark pants and a plaid sweater. Deputies and a search helicopter responded to the area and began searching for the suspect.

About 20 to 30 minutes later, the helicopter spotted a car driving through the trailer park toward the exit at Rosecrans Avenue. Deputy Hector Vasquez stopped the car at the exit. Inside the vehicle were defendant in the front passenger's seat, his friend Jesus Estrada in the driver's seat, and defendant's wife Nancy Duarte Alonzo in the rear seat. Vasquez, who testified at trial, observed that defendant matched the description of the suspect, appeared to be nervous, was "kind of sweaty and avoiding eye contact," and had long hair. Vasquez radioed Kearns to ask if the suspect had long hair. Kearns replied that he thought the suspect had short hair but was not positive.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

Kearns went to the trailer park exit and identified defendant as the suspect who fled from the stolen Camry. Kearns spoke separately with defendant and his companions. Defendant told Kearns that they had come to the trailer park to get some food. Jesus said that they had come to get food from his mother and had been there "about an hour." Nancy claimed that they had been visiting a friend's family member for "a couple hours." After defendant was taken into custody, the Camry was searched. A shaved Allen wrench was found in the ignition.

Defendant was charged with unlawful driving or taking of a vehicle with a prior conviction. (§ 666.5.) The information alleged that he had served two prior prison terms and suffered three prior theft convictions: in 2005 for unlawful driving or taking of a vehicle (No. BA285678) (Veh. Code, § 10851, subd. (a)); in 2006 for felony grand theft auto (No. BA301302) (§ 487, subd. (d)(1)); and in 2008 for felony grand theft auto (No. YA071291) (§ 487, subd. (d)(1)). The 2006 conviction (No. BA301302) was alleged to be a serious felony strike based on the true finding on a criminal street gang allegation. (§§ 186.22, 1192.7, subd. (c)(28).)

At a pretrial hearing, defendant sought to exclude the prior convictions. The prosecution announced its intention to use the 2005 conviction to support the section 666.5 charge, and the 2006 and 2008 convictions to prove a common plan or scheme and identity. (Evid. Code, § 1101, subd. (b).) It was agreed that in return for defendant's admission of the 2005 conviction, that prior offense would be excluded from trial. (See *People v. Young* (1991) 234 Cal.App.3d 111, 113 (*Young*) [when defendant charged under section 666.5 admits prior conviction before trial, "the jury is not to be informed of the charge or admission"].)

As to the 2006 and 2008 convictions, defendant raised objections under Evidence Code sections 1101 and 352. The trial court implicitly overruled the section 352 objection, and found the prior convictions admissible to prove a common plan or scheme and identity under subdivision (b) of section 1101. Quoting *People v. Ewoldt* (1994) 7 Cal.4th 380, 402–403 (*Ewoldt*), the court stated that "'evidence of a defendant's uncharged misconduct is relevant where the uncharged misconduct and the charged

3

offense are sufficiently similar to support the inference that they are manifestations of a common design or plan.'"

At the beginning of trial, the court informed the jury that defendant was "charged with the unlawful driving or taking of a vehicle *with a prior conviction*." (Italics added.) Outside the jury's presence, defendant moved for a mistrial, arguing that the court's reference to "a prior conviction" was improper under *Young*, *supra*, 234 Cal.App.3d at page 113. The motion was denied.

During the prosecution's case in chief, Kearns testified to the events that occurred on the night of defendant's arrest, and positively identified him in court. Kearns stated that defendant was clearly visible from a distance of 30 feet, that "darkness was not an issue," and that defendant was "fully illuminated" by street lamps and lights on buildings. Kearns testified that there were no keys in the stolen Camry, only a shaved Allen wrench, which car thieves often use to steal older model vehicles such as this one.

Sharlton Wampler, a Los Angeles Police Department gang enforcement officer, testified about defendant's 2006 conviction. She stated that while patrolling near Alameda Street and Vernon Avenue, the LoJack indicator on her vehicle directed her to a stolen Suburban. When she got behind the Suburban, the driver—defendant—stopped the vehicle and ran away. Defendant was arrested, and the Suburban, which he was driving without a key, had a damaged steering column.

Deputy Trina Schrader testified about the 2008 conviction. While on patrol near 101st Street, her vehicle's LoJack indicator alerted her to the presence of a stolen Honda Civic. When Schrader began following the Civic, the driver—defendant—stopped the car and fled. Defendant was arrested and had a shaved key in his sock.

Defendant presented four alibi witnesses. His mother, Ramona Alonzo, testified that she lives in Cudahy with defendant and his wife Nancy.[2] At about 10:30 p.m. on the night of the arrest, they asked her to babysit while Jesus drove them to Nancy's mother's house.

---

[2] Because several of the defense witnesses share the same surnames, we refer to them by their first names; no disrespect is intended.

4

Nancy's mother, Maria Duarte, testified that she lives at the trailer park where defendant was arrested. They came over that night to pick up a container of homemade soup. Jesus waited for them in his car. They stayed for about five minutes.

Jesus, who lives near defendant, testified that he drove defendant and Nancy to Maria's house to pick up some soup that she had made for him. Maria lives in Paramount, about 10 to 15 minutes away. He stayed in the car. As they drove to the exit, police rushed over to arrest defendant.

Nancy testified that Jesus drove them to her mother's house at 11:15 p.m. to pick up soup and drop off toilet paper. They arrived at 11:37 p.m., and stayed for five minutes. On the night of the arrest, she did not tell an officer that they had been there for a few hours, nor did she see an officer identify her husband at the scene.

The parties stipulated that during police broadcasts on the night of the arrest, Kearns stated at 11:38 p.m. that he was running and chasing a suspect southbound on Orange Avenue towards Rosecrans Avenue; at 11:39 p.m. that the suspect was heading eastbound at 1402 Orange; seconds later that the suspect was a male Hispanic, wearing jeans and a long-sleeve plaid-colored shirt; and at 11:51 p.m. (in response to another officer's question regarding the suspect's hair) '"I want to say it was short hair, but I'm not positive."'

In closing argument, the prosecutor focused on the common features of the 2006 and 2008 offenses and the present offense: in each instance, defendant used a tool to start the ignition, and ran away when stopped by police. The prosecutor noted that even though no tool was recovered in the 2006 case, the steering column was damaged as it would have been if a tool had been used, and defendant had fled from police.

The prosecutor argued that defendant was positively identified by Kearns, and matched the description of the suspect. As to whether the suspect had short hair, Kearns qualified his statement by saying he was not positive. The varying accounts by Jesus and Nancy regarding the length of their visit cast doubt on their story that they had gone late at night to pick up soup for Jesus, who waited in the car.

5

Defense counsel argued that the prosecution was using the 2006 and 2008 incidents to buttress a weak case. The methods used in the prior crimes are not unique; car thieves often use shaved tools and flee from police. It is improper to convict anyone simply because that person "has a bad character or is disposed to commit the crime." Defendant's clothing at the time of arrest—a checkered sweater—did not match the suspect's plaid-colored shirt. Regardless of the discrepancies or "mistakes" regarding the length of their visit—Maria said five minutes, Nancy said three to four hours, Jesus said an hour—the witnesses consistently testified that defendant was at Maria's house during the pursuit of the suspect, and in order to find him guilty, "you have to find all . . . of them lied."

The jury received the standard CALCRIM No. 375 instruction, "Evidence of Uncharged Offense to Prove Identity, Intent, Common Plan, etc.," which defendant had sought to modify with a pinpoint instruction that "[t]he evidence of the prior uncharged acts shows such unique circumstances attending the commission of the uncharged act and are so distinctive as to suggest only one person, the defendant, committed the acts charged."[3] The court refused to give a pinpoint instruction.

---

[3] As given, the CALCRIM No. 375 instruction stated: "The People presented evidence that the defendant committed acts similar to the act in this case on more than one occasion in the past. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the crimes. [¶] Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden, you must disregard this evidence entirely. If you decide that the defendant committed the acts, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not the defendant was the person who committed the offenses alleged in this case. [¶] In evaluating this evidence, consider the similarity between the acts and the charged offense. Do not consider this evidence for any other purpose except for the limited purpose of determining whether the defendant was the person who committed the offenses alleged in this case and/or the defendant acted with the intent to deprive. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. If you conclude that the defendant committed the acts, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the unlawful taking or

6

After deliberating, the jury convicted defendant of the section 666.5 charge.

At the sentencing hearing, defendant admitted the three prior theft convictions in 2005 (No. BA285678), 2006 (No. BA301302), and 2008 (No. YA071291). As to the 2006 conviction, defendant was asked: "Do you admit that on June 12th of 2006, in case No. BA301302, you were convicted of a violation of Penal Code section 487(d)(1)?" He replied, "Yes, Sir." According to the reporter's transcript, there was no reading of the prior serious strike felony allegation, nor any mention of the gang enhancement finding in the 2006 case.

However, later at the same hearing, defendant's attorney mentioned the gang enhancement allegation in connection with a motion to strike the 2006 conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). Defendant's attorney argued that the criminal street gang allegation made no sense. The trial court interrupted to ask whether counsel was referring to "the one where we've got the 186[.22] enhancement that [defendant] pled on?" Defendant's attorney replied, "I am." He explained that unlike most gang-related cases, there was no indication that the 2006 case was gang-related, other than that defendant "was in a stolen vehicle, and one of the deputies came and said he's an active member of the 38th Street gang . . . ." Defendant's attorney suggested that defendant entered a plea agreement in the 2006 case without "really understanding he was getting a strike, and now that's going to be carried with him for some time." The *Romero* motion was denied.

Also at that hearing, defendant moved for a new trial. He argued that the 2006 and 2008 convictions were erroneously admitted in violation of Evidence Code sections 1101 and 352. He claimed that the methods used to commit the prior crimes—the use of a shaved key and the attempt to flee—were not sufficiently unique to prove identity. The motion was denied.

driving of a vehicle. The People must still prove each charge and allegation beyond a reasonable doubt."

7

The trial court imposed a mid-term sentence of three years, doubled to six years under the Three Strikes law. This timely appeal followed.

## DISCUSSION

## I

Defendant challenges the admission of the 2006 and 2008 grand theft auto convictions. We find no abuse of discretion.

The trial court found that both prior convictions were relevant to prove a common design or plan and identity. Subdivision (b) of Evidence Code section 1101 permits evidence of prior acts to "prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than [the defendant's] disposition to commit such an act."

Defendant argues that because car thieves often use shaved tools and flee from police, the prior crimes are not sufficiently unique or distinctive to create a signature that tends to identify him as the perpetrator in this case. However, the prior crimes were admitted not only to prove identity, but a common design or plan. Unlike the use of a prior crime to prove identity, the use of a prior crime to prove a common plan does not turn on the presence of an unusual or distinctive signature. (*Ewoldt*, *supra*, 7 Cal.4th at pp. 402–403.)

Where, as here, prior crimes are used to prove a common plan or scheme, the issue is not whether the methods used in the prior offenses were sufficiently unique to identify the defendant as the perpetrator in the current offense, but whether the methods employed in the current and prior offenses are "sufficiently similar to support the inference that they are manifestations of a common design or plan." (*Ewoldt*, *supra*, 7 Cal.4th at pp. 401–402.) *Ewoldt* explained that "[t]o establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual. For example, evidence that a search of the residence of a person suspected of rape produced a written plan to invite the victim to his residence and, once alone, to force her to engage in

8

sexual intercourse would be highly relevant even if the plan lacked originality. In the same manner, evidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts. *Unlike evidence of uncharged acts used to prove identity, the plan need not be unusual or distinctive*; *it need only exist to support the inference that the defendant employed that plan in committing the charged offense*. [Citation.]" (*Id.* at pp. 402–403, italics added.)

In *Ewoldt*, the defendant was charged with sexual molestation of his stepdaughter. He challenged the admission of a prior uncharged act of molestation against a sister of the victim in that case. The Supreme Court held that evidence of the prior uncharged act was admissible "to prove a material fact other than defendant's criminal disposition," namely, that he "committed the charged offenses pursuant to the same design or plan [that he] used to commit the uncharged misconduct." (*Ewoldt*, *supra*, 7 Cal.4th at p. 393.) The prior uncharged act was not used "to prove the defendant's intent or identity but rather to prove that the defendant engaged in the conduct alleged to constitute the charged offense." (*Id.* at p. 394.)

*Ewoldt* discussed several cases in which prior crimes were admitted to prove a common design or plan. It noted, for example, that in *People v. Lisenba* (1939) 14 Cal.2d 403, the defendant was convicted of drowning his wife in order to collect on an insurance policy. The defendant challenged the admission of a prior conviction of a similar crime—drowning his previous wife who had a similar insurance policy. The Court held the prior crime was relevant to "establish a common design or plan to murder his wives for financial gain. [Citations.]" (*Ewoldt*, *supra*, 7 Cal.4th at p. 395.)

We conclude that, as in *Ewoldt*, evidence of the 2006 and 2008 crimes was relevant to establish a common plan or design to steal vehicles with a shaved tool and flee when caught. The prior crimes were relevant to show that defendant was not an innocent visitor at the trailer park, but had abandoned the stolen Camry on the next street, fled

9

from Kearns, climbed over the wall, and hid at his mother-in-law's home until Jesus and his wife arrived.

In assessing whether the prior crimes should have been excluded because their prejudicial effect outweighed their probative value, the test is "whether the probative value of the evidence of defendant's [prior crimes] is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code, § 352.)" (*Ewoldt*, *supra*, 7 Cal.4th at p. 404.) "'Evidence is prejudicial within the meaning of Evidence Code section 352 if it "'uniquely tends to evoke an emotional bias against a party as an individual'" [citation] or if it would cause the jury to "'"prejudg[e]" a person or cause on the basis of extraneous factors'" [citation].' [Citation.]" (*People v. Foster* (2010) 50 Cal.4th 1301, 1331 (*Foster*).)

Here, as in *Ewoldt*, the probative value of the prior crimes depends on whether they tended to demonstrate the existence of a common design or plan. (*Ewoldt*, *supra*, 7 Cal.4th at p. 404.) We conclude that the evidence was probative because it tended to show that defendant used the common design or plan employed in the prior offenses to commit the present offense, and was not an innocent visitor at the trailer park. The jury was instructed not to convict defendant of the charged offense based on his bad character or disposition to commit the crime, and it is assumed that the jury followed this instruction. (*People v. Wilson* (2008) 44 Cal.4th 758, 803.)

Because the prior crimes were admissible to prove a common design or plan, we need not consider whether they also were admissible to prove identity. (*Foster*, *supra*, 50 Cal.4th at pp. 1328–1329 [where evidence of prior conduct properly admitted to show defendant's intent and plan, it is not necessary to decide whether evidence was also admissible to prove identity]; *People v. Williams* (1998) 44 Cal.3d 883, 911 [where evidence is properly received, basis for ruling is immaterial].) Even if we assume the prior crimes were not admissible to prove identity, the error was harmless in light of the strong eyewitness identification testimony provided by Kearns. (See *Foster*, *supra*, 50 Cal.4th at pp. 1332–1333.)

10

## II

Defendant contends the jury should not have been told that he was charged with unlawful taking or driving of a vehicle *with a prior conviction*. He argues that his pretrial admission of the 2005 conviction rendered the reference to "a prior conviction" improper, and his motion for mistrial should have been granted.

The argument is based on section 1025, which states that "[w]hen a defendant who is charged in the accusatory pleading with having suffered a prior conviction pleads either guilty or not guilty of the offense charged against him or her, he or she shall be asked whether he or she has suffered the prior conviction. If the defendant enters an admission, his or her answer shall be entered in the minutes of the court, and shall, unless withdrawn by consent of the court, be conclusive of the fact of his or her having suffered the prior conviction in all subsequent proceedings. . . ." (§ 1025, subd. (a).) However, section 1025 does not impose an absolute bar against evidence of a prior conviction. "The inhibition embodied in section 1025 of the Penal Code to the effect that when previous convictions are admitted they shall not be alluded to during trial 'is not basal or fundamental, but only a statutory regulation' [citation]; that is to say, it is not absolute . . . ." (*People v. Murray* (1940) 42 Cal.App.2d 209, 215.) On appeal, the erroneous admission of a prior conviction is evaluated under the *Watson* standard of prejudice. (*People v. Bouzas* (1991) 53 Cal.3d 467, 481 (*Bouzas*); *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).)[4]

---

[4] In *Bouzas*, the defendant was charged with petty theft with a prior. The evidence of his guilt was not strong, and his explanation—that rather than wait in the checkout line, he abandoned the merchandise inside the store and left—was not implausible. (*Bouzas*, *supra*, 53 Cal.3d at p. 481.) Given these circumstances, the Court found that the prior robbery conviction, which was admitted by the defendant before trial, should have been excluded, and that its admission was prejudicial: "when the jury erroneously learned defendant was previously convicted of robbery, a verdict of guilt on petty theft became significantly more probable. We conclude there is a reasonable probability of a different verdict had the jury not been informed of defendant's prior robbery conviction. (*Watson*, *supra*, 46 Cal.2d at pp. 836–837.)" (*Bouzas*, at p. 481.)

11

After the trial court referred to "a prior conviction," the jury heard testimony regarding the 2006 and 2008 convictions. There was no indication whether the "prior conviction" referred to by the trial court was one of the two prior convictions presented to the jury. Defendant argues that if the jury believed he had three prior convictions, there was a high danger that he was convicted because the jury believed he is a professional car thief.

It would be speculative to assume that the jury believed there were three prior convictions, given that no evidence of the 2005 conviction was presented at trial. Because the trial court's fleeting reference to "a prior conviction" did not specify the date of that crime, the jury may have reasonably inferred that it was one of the two prior crimes presented at trial. Given the vague nature of the reference to the prior conviction, even assuming the court erred in mentioning it, the error was harmless. The jury was correctly instructed that it was not to conclude from the evidence of prior crimes that the defendant has a bad character or is disposed to commit crime; that if it found that the defendant committed the prior crimes, that was "only one factor to consider along with all the other evidence," and was "not sufficient by itself to prove that the defendant is guilty of the unlawful taking or driving of a vehicle"; and "[t]he People must still prove each charge and allegation beyond a reasonable doubt." The record does not disclose a reasonable possibility that defendant would have obtained a better result if the reference to "a prior conviction" had been omitted.

As to the motion for mistrial, it should be granted only "'"'"when a party's chances of receiving a fair trial have been irreparably damaged."'" [Citation.] Whether a particular incident is so prejudicial that it warrants a mistrial 'requires a nuanced, fact-based analysis,' which is best performed by the trial court. [Citation.] We review a trial court's order denying a motion for mistrial under the deferential abuse of discretion standard. [Citation.] 'Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1094.) Applying

12

these factors, we find no basis to conclude that defendant was denied a fair trial. The ambiguous reference to "a prior conviction" did not prejudice defendant, and the court did not abuse its discretion in denying the motion.

### III

Defendant argues the trial court erred in denying his proposed modification to CALCRIM No. 375. He contends the pinpoint instruction he sought would have correctly instructed the jury that the evidence of prior crimes must demonstrate circumstances so unique and distinctive as to suggest that "only one person, the defendant, committed the acts charged." We find no error.

The general rule is that "[a] trial court must instruct on the *law* applicable to the facts of the case. [Citation.] In addition, a defendant has a right to an instruction that pinpoints the *theory* of the defense. [Citation.] The court must, however, refuse an argumentative instruction, that is, an instruction 'of such a character as to invite the jury to draw inferences favorable to one of the parties from specified items of evidence.'" (*People v. Homick* (2012) 55 Cal.4th 816, 890, quoting *People v. Mincey* (1992) 2 Cal.4th 408, 437.)

We conclude that the proposed pinpoint instruction was argumentative because it invited the jury to apply greater weight to a single piece of evidence—that shaved tools are commonly used to steal vehicles. This would have highlighted the defense theory that because the methods used to commit the prior offenses were not unique, they were not distinctive enough to identify defendant as the perpetrator in the present case. But the pinpoint instruction would have been argumentative and confusing to the jury, given that the prior crimes were relevant to prove a common scheme or plan. As discussed, unlike evidence of prior offenses to prove identity, evidence of a common plan need not be unusual or distinctive, and need only support an inference that the current offense was committed pursuant to the common plan. (*Ewoldt, supra,* 7 Cal.4th at pp. 402–403.)

13

## IV

Defendant contends the prosecution did not prove that his 2006 grand theft auto conviction (No. BA301302) constituted a serious felony under the Three Strikes law, nor did he admit that the 2006 conviction constituted a serious felony or included a criminal street gang finding.  Based on his claim of insufficient evidence, he seeks a reversal of his second strike sentence, with a remand for resentencing, or, if the prosecution elects, a retrial of the prior serious felony allegation.  (Citing *Monge v. California* (1998) 524 U.S. 721, 734 [prior jeopardy rule does not bar retrial of prior conviction allegation]; *People v. Barragan* (2004) 32 Cal.4th 236, 241 [same].)  We find no basis for reversal.

We agree the record does not show that defendant was asked to admit that the 2006 grand theft auto conviction constituted a serious felony, or that the criminal street gang allegation was found to be true.  However, the record shows that after defendant admitted the 2006 conviction, he moved to strike the conviction under *Romero*, *supra*, 13 Cal.4th 497.  The *Romero* motion was an acknowledgment that the 2006 conviction qualified as a felony strike conviction.  Indeed, his attorney's argument that the criminal street gang allegation made no sense, and that he entered the plea agreement in the 2006 case without "really understanding he was getting a strike," supports that conclusion.  By these admissions, defendant conceded that the 2006 plea agreement encompassed the criminal street gang allegation, which elevated the offense to a serious felony.  (§ 1192.7, subd. (c)(28).)  The record is sufficient to show that defendant voluntarily admitted the criminal street gang allegation in the 2006 case.  (See *People v. Thomas* (1986) 41 Cal.3d 837, 844 [if defendant "wants to assert that in fact he was not properly advised of the basis of the serious felony charges, he will have to do so by petition for writ of habeas corpus"].)

14

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

MANELLA, J.

15