Filed 9/7/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JON F. HOLM,<br><br>    Defendant and Appellant. | A143873<br><br>(Sonoma County<br>Super. Ct. No. SCR636031) |

### INTRODUCTION

After defendant Jon Holm was convicted of second degree burglary, he filed a petition under Proposition 47[1] seeking to reduce his offense to misdemeanor shoplifting under Penal Code section 459.5.[2] The trial court denied his petition on the ground the private golf and country club from which he stole a flat screen television and golf balls was not a "commercial establishment" within the meaning of that section. We conclude otherwise and reverse and remand.

### BACKGROUND

In 2013, defendant was charged with burglary, receiving stolen property, and false impersonation.[3] (§§ 459, 496, subd. (a), 529.) He pleaded no contest to second degree burglary, a felony, and to impersonation, a misdemeanor. He admitted taking a

---

[1] The voters enacted Proposition 47, the Safe Neighborhood and Schools Act, on November 4, 2014, effective the next day. (Cal. Const., art. II, § 10, subd. (a); *In re J.C.* (2016) 246 Cal.App.4th 1462, 1469 [201 Cal.Rptr.3d 731].)

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] The impersonation offense, unrelated to the burglary, was based on defendant using a friend's driver's license to check into a motel.

1

television, valued at $662.23, and three boxes of golf balls, valued at $50 each, from the Santa Rosa Golf and Country Club.

The following year, in November 2014, defendant filed a Proposition 47 petition for resentencing under section 1170.18. At the hearing, Don Florriani, the general manager and CEO of the country club, testified regarding the operations of the club and the items taken. The club is open to members and their guests, but not to the general public. The club's facilities include a pro shop, two restaurants, men's and women's locker rooms, a golf course and banquet facilities. The club also displays art work by local artists, which members and their guests may purchase. Members of the general public, however, can rent the banquet facilities.

Florriani testified the stolen television was worth "$650, $670" and at "least three boxes" of personalized golf balls were taken, valued at $50 each. In addition, a painting was taken, although it was not mentioned in the complaint. The artist testified the painting was worth $2,000.

In denying defendant's petition, the trial court stated: "The petition is going to be denied not for the amount, though I think the amount is probably over [$]950; it hasn't been proven. I don't think that the People have carried their burden of showing that this was over [$]950. But this is not a commercial establishment, in my opinion, within the meaning of Prop 47. This is a private club that you have to be a member. Mr. Holm, according to the presentence report, was not a member of the club at the time that he was actually expelled in 2011, so he's not a member within the meaning of Penal Code section [1170.18], for that reason this is denied."

## DISCUSSION

The sole issue on appeal is whether, under the new shoplifting statute established by Proposition 47, a private golf and country club is a "commercial establishment," allowing defendant's felony conviction of second degree burglary to be reduced to misdemeanor shoplifting.

"Proposition 47, which is codified in section 1170.18,[4] reduced the penalties for a number of offenses.  Among those crimes reduced are certain second degree burglaries where the defendant enters a commercial establishment with the intent to steal.  Such offense is now characterized as shoplifting as defined in new section 459.5.  Shoplifting is now a misdemeanor unless the prosecution proves the value of the items stolen exceeds $950."  (*People v. Sherow* (2015) 239 Cal.App.4th 875, 879 [191 Cal.Rptr.3d 295].)

Section 459.5 specifies:  "Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950).  Any other entry into a commercial establishment with intent to commit larceny is burglary.  Shoplifting shall be punished as a misdemeanor, except that a person with one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290 may be punished pursuant to subdivision (h) of Section 1170."  (§  459.5, subd. (a).)

" ' "In interpreting a voter initiative . . . we apply the same principles that govern statutory construction.  [Citation.]  Thus, 'we turn first to the language of the statute,

---

**4**  Section 1170.18 provides in pertinent part:  "Upon receiving a petition under subdivision (a), the court shall determine whether the petitioner satisfies the criteria in subdivision (a).  If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor pursuant to Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, those sections have been amended or added by this act, unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.  In exercising its discretion, the court may consider all of the following:  [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes.  [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated.  [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."

giving the words their ordinary meaning.' [Citation.]" ' [Citations.] ' "The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" [Citation.] In other words, "our primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure." ' [Citation.] Our review is de novo. [Citation.]" (*In re J.L.* (2015) 242 Cal.App.4th 1108, 1114–1114 [195 Cal.Rptr.3d 482] (*J.L.*).)

Proposition 47 provides: "This act shall be liberally construed to effectuate its purposes." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 18, p. 74 (2014 Voter Guide).)[5] The Ballot Pamphlet, in turn, enumerated the intent and purposes of the proposition as: "[r]equir[ing] misdemeanors instead of felonies for nonserious nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes," "[a]uthoriz[ing] consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors," and "savi[ing] significant state corrections dollars on an annual basis." (2014 Voter Guide, *supra*, text of Prop. 47, § 3, p. 70.)

While acknowledging the "first step in statutory construction is to focus on the plain meaning of the words used," the Attorney General maintains we should, instead, focus on the "common understanding of 'shoplifting' " and construe "commercial establishment" to mean "a store or shop that is open to the public with regular business hours." We cannot, however, short circuit the task of statutory construction and must therefore look first at the words of the statute and their plain meaning. (See *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387–388 [97 Cal.Rptr.3d 464, 212 P.3d 736].)

---

[5] We previously granted defendant's request for judicial notice of the legislative history of Proposition 47.

4

Several recent decisions have considered the meaning of "commercial establishment" as used in section 459.5. In *J.L.*, *supra*, 242 Cal.App.4th 1108, for example, the court considered whether a public school was a "commercial establishment" within the meaning of the statute. "Giving the term its commonsense meaning, a commercial establishment is one that is primarily engaged in commerce, that is, the buying and selling of goods or services. That commonsense understanding accords with dictionary definitions and other legal sources. (Webster's 3d New Internat. Dict. (2002) p. 456 ['commercial' means 'occupied with or engaged in commerce' and 'commerce' means 'the exchange or buying and selling of commodities esp. on a large scale']; The Oxford English Reference Dict. (2d ed. 1996) p. 290 [defining 'commerce' as 'financial transactions, esp. the buying and selling of merchandise, on a large scale']; Black's Law Dict. (10th ed. 2014) p. 325 ['commercial' means '[o]f, relating to, or involving the buying and selling of goods; mercantile']; see also 37 C.F.R. § 258.2 (2015) [copyright regulation defining the term 'commercial establishment' as 'an establishment used for commercial purposes, such as bars, restaurants, private offices, fitness clubs, oil rigs, retail stores, banks and financial institutions, supermarkets, auto and boat dealerships, and other establishments with common business areas']; Gov. Code, § 65589.5, subd. (h)(2)(B) [defining 'neighborhood commercial' land use as 'small-scale general or specialty stores that furnish goods and services primarily to residents of the neighborhood']; *People v. Cochran* (2002) 28 Cal.4th 396, 404–405 [121 Cal.Rptr.2d 595, 48 P.3d 1148] [quoting dictionary definition of commerce, '[t]he buying and selling of goods, especially on a large scale,' in interpreting statutory phrase 'commercial purpose'].)" (*In re J.L., supra*, 242 Cal.App.4th at p. 1143.)

Applying these definitions of "commercial," the *J.L.* court concluded "[a] public high school is not an establishment primarily engaged in the sale of goods and services; rather, it is an establishment dedicated to the education of students." (*In re J.L., supra*, 242 Cal.App.4th at p. 1114.)

In *People v. Hudson* (Aug. 16, 2016, D068439) 2016 WL 4366796, *2–*3, the court applied the same definition of "commercial establishment" and held a commercial

bank is such an establishment.  "Because 'commercial' involves being engaged in commerce, including financial transactions, we conclude the term 'commercial establishment' includes a bank." (*Id.* at p. *3.)  While the court acknowledged "a common understanding of the word 'commercial' encompasses the buying and selling of merchandise in a retail establishment," it went on to observe  "nothing in the text of the Act supports this narrow interpretation and we reject it."  (*Ibid.*; see also *People v. Abarca* (Aug. 12, 2016, E063687) 2016 WL 4256888, *3–*4 [bank is "commercial establishment"]; *People v. Smith* (2016) 1 Cal.App.5th 266, 272–273 [1 Cal.Rtpr.2d 858] [check cashing business is "commercial establishment"]; compare *People v. Stylz* (Aug. 15, 2016, B263072) 2016 WL 4272014, *2 [locked storage unit was not "commercial establishment"].)

We also agree with the definition of "commercial establishment" applied in these cases.  Applying it here, we conclude the Santa Rosa Golf and Country Club is an establishment "primarily engaged in the sale of goods and services."  The fact most of these are sold to a subset of the general public—namely individual club members and their guests—does not change the commercial nature of the establishment.  Furthermore, the club sells some of its goods and services, namely its banquet space and services, to the general public.

As defendant notes, a similar issue arose under the Unruh Civil Rights Act[6] which provides, in pertinent part:   "All persons . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  In *Warfield v. Peninsula Golf & Country Club* (1995) 10 Cal.4th 594 [42 Cal.Rptr.2d 50, 896 P.2d 776] (*Warfield*), our Supreme Court considered whether the nonprofit country club could legally exclude women from proprietary membership.  (*Id*. at pp. 598–599.)  Although a private club is "not generally thought of as a traditional business establishment," the court held the golf and country

---

[6]  Civil Code section 51.

club's "regular business transactions with nonmembers" rendered it a "business establishment for the purposes of section 51." (*Id.* at pp. 616, 621, 623.)

The Attorney General maintains *Warfield* is inapposite because the term "business establishment" in the Unruh Civil Rights Act is purportedly broader than "commercial establishment" in the shoplifting statute, and "it stands to reason that the term 'business establishment' would be given a broad interpretation in order to prohibit businesses from discriminating against minorities and women." (See *Warfield*, *supra*, 10 Cal.4th at p. 611.)

However, as we have observed, Proposition 47 specifies "This act shall be liberally construed to effectuate its purposes." (2014 Voter Guide, *supra*, text of Prop. 47, § 18, p. 74.) Given that these purposes include reducing felonies to misdemeanors for nonserious nonviolent offenses and reducing the costs associated with felony incarcerations, it would be *in*consistent with the purposes of this legislation to narrowly construe the pivotal term "commercial establishments."

We therefore conclude "commercial establishment" within the meaning of section 459.5 means a business that is primarily engaged in the buying and selling of goods or services regardless of whether these goods or services are sold to "members" or the general public.

Thus, under the provisions of Proposition 47, defendant is entitled to have his conviction of second degree felony burglary reduced to misdemeanor shoplifting under section 459.5, unless the trial court determines on remand resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.18, subd. (b).)

7

**DISPOSITION**

The order denying defendant's petition for recall of sentence and request for resentencing is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Dondero, J.

Trial Court:                                      Sonoma County Superior Court

Trial Judge:                                   Honorable Jamie E. Thistlethwaite

David McNeil Morse, under appointment by the Court of Appeal for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Acting Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, and Violet M. Lee, Deputy Attorney General for Plaintiff and Respondent.