Filed 11/18/16 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARK ANTHONY COLBERT,<br><br>    Defendant and Appellant. | H042499<br>(Santa Clara County<br>Super. Ct. No. 206805)<br><br>ORDER MODIFYING OPINION<br>NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed herein on November 9, 2016, be modified in the following particulars:

On page 1, the first paragraph, the last sentence is modified to read: "On appeal, Colbert contends the trial court erred in ruling these convictions were ineligible for redesignation."

There is no change in judgment.


Dated:_____      _____
                                                                        Premo, J.


_____      _____
        Rushing, P.J.                                            Grover, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H042499 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 206805) |
| v. | |
| MARK ANTHONY COLBERT, | |
| Defendant and Appellant. | |

Defendant Mark Anthony Colbert appeals from an order denying his petition to redesignate certain felony convictions as misdemeanors under Proposition 47, the Safe Neighborhoods and Schools Act. On appeal, Colbert contends the trial court erred in ruling these convictions were eligible for redesignation.[1]

We find no merit to Colbert's arguments and will affirm the order.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Following his conviction on four felony counts of second degree burglary (Pen. Code, §§ 459, 460, subd. (b)), Colbert was sentenced to a total term of two years eight months in prison, consecutive to a six year prison term he incurred due to a robbery he committed in San Mateo County while out on bail on the burglary charges.

---

[1] Unspecified statutory references are to the Penal Code.

[2] By order dated November 4, 2015, we denied Colbert's request to take judicial notice of the trial record in Santa Clara County Superior Court case No. 206805. On the court's own motion, we take judicial notice of this court's unpublished opinion on the direct appeal from that case, *People v. Colbert* (Feb. 29, 2000, H019315).

*A.      Facts relating to Count 1*

"On December 26, 1996, while Susan Welter, the manager of a Shell service station in Campbell, California, saw one Black man talking to a clerk about lottery tickets, another Black man took money from the back office.  Welter was shown a photo lineup almost a year after the incident and identified the man who was talking about lottery tickets.  The clerk was unable to positively identify anyone." (*People v. Colbert*, *supra*, H019135.)

"[A]bout $300 in cash was taken [in this burglary]."[3]

*B.      Facts relating to Count 2*

"On December 30, 1996, Maria Ramirez, the manager of a 7-Eleven store in Sunnyvale, saw two men enter the store together and then separate.  One stayed at the front register and purchased lottery tickets and the other went to a back room, came out of it, and left the store.  The other then left the store.  Both men were six feet tall and were between the ages of 20 to 30 years old.  Appellant is under six feet tall and was 40 years old." (*People v. Colbert*, *supra*, H019135.)

The trial court's May 12, 2015 order noted that "approximately $318 dollars [*sic*] was taken [in this burglary]."

*C.      Facts relating to Count 3*

"On January 6, 1997, Chuong Doan was working at a 7-Eleven store in Los Gatos when two Black men entered the store.  The taller man asked to use the rest room, which Doan would not allow.  While the shorter man bought a lottery ticket, the taller man 'just walked through.'  They then left the store together.  Thu Cates, the franchisee, saw a Black man closing the door to the office and later found a bank deposit bag missing.

---

[3] Our prior unpublished opinion did not specify the amounts taken in each burglary, with the exception of count 4 in which no money was taken.  With respect to counts 1, 2 and 3 we derive the amounts taken from the trial court's May 12, 2015 order denying Colbert's petition for redesignation.

When the man saw Thu, he stated that he was looking for the bathroom. She was unable to identify anyone in a photo lineup. Another employee on her way to work saw two Black men, one with lotto tickets in his hand, get into a maroon car with a dent on the side. She was unable to identify anyone in a photo lineup.

"However, a month later, Doan identified appellant from the photo lineup, and at the preliminary hearing in May 1997, he identified appellant as a man who had been in the store. At trial he was unable to positively identify appellant." (*People v. Colbert*, *supra*, H019135.)

According to the trial court's May 12, 2015 order, the bank deposit bag taken in this burglary contained "more than $3000."

D.    *Facts relating to Count 4*

"On January 27, 1997, Mohammed Elissa, cashier at a 7-Eleven store in Los Gatos, observed two Black men enter the store together and then split up. The shorter one remained at the cash register and was involved with lottery tickets and the taller man proceeded to the wine cooler and 'vanished.' Elissa went to the store office and saw the tall man with a cup of coffee. The man said he was looking for the manager and then he left the area. The tall man told the other to pay for the coffee, which he did. The two men left the store together. Elissa wrote down the license plate number of their car. The tall man asked Elissa if there was a problem. No money was missing from the store on January 27. About a week after the incident, Elissa identified appellant in a photo lineup as the shorter man." (*People v. Colbert*, *supra*, H019135.)

E.    *Colbert's petition to redesignate under Proposition 47*

On May 6, 2015, Colbert petitioned the trial court to redesignate certain of his felony convictions for second degree burglary as misdemeanors pursuant to section 1170.18, subdivision (f). By written order dated May 12, 2015, the trial court denied Colbert's petition, finding that he was not eligible for the relief requested. The trial court noted that, in each case, "[Colbert] and an accomplice entered an establishment

3

and, while one of them distracted the cashier . . . , the other snuck into the non-public areas of the building to commit the intended thefts." As a result, the offenses were based "upon entry into a private . . . office area and not a commercial establishment that was open during business hours" and could not qualify as "shoplifting" under section 459.5. As an additional basis for denying relief, the trial court noted that the amount stolen in count 2 was over $950. Because Colbert and his accomplice employed the same "modus operandi" in each theft, it "strongly suggests that the amount *intended to be taken* in each case exceeded $950."

Colbert timely appealed.

## II.    DISCUSSION

Colbert argues he was entitled to redesignation of the three counts at issue because they all involved theft of less than $950 from a commercial establishment during business hours. According to Colbert, the trial court erred by finding that the thefts were based on entry into "private . . . office area." He further argues it erred by finding, without any supporting evidence, that Colbert and his companion "intended to take" more than $950 from the stores they entered.

### A.    *Overview of Proposition 47*

Under Proposition 47, an individual who has completed his or her sentence for a felony conviction can file a petition with the trial court to have the conviction designated as a misdemeanor, so long as that conviction would have qualified as a misdemeanor under Proposition 47 had its provisions been in effect at the time of the offense. (§ 1170.18, subd. (f).) If a petitioner's application satisfies the requirements set forth under section 1170.18, subdivision (f), the court "shall designate the felony offense or offenses as a misdemeanor." (*Id*., subd. (g).)[4] No hearing is necessary in order to grant an application filed under section 1170.18, subdivision (f). (*Id*., subd. (h).)

---

[4] A petitioner is not eligible to have his felonies designated as misdemeanors if he or she has one or more prior convictions for an offense specified in section 667,

4

Among the crimes reduced to misdemeanors by Proposition 47 "are certain second degree burglaries where the defendant enters a commercial establishment with the intent to steal. Such offense is now characterized as shoplifting as defined in new section 459.5." (*People v. Sherow* (2015) 239 Cal.App.4th 875, 879.) Section 459.5, subdivision (a), provides: "Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary."

*B.     Analysis*

It is undisputed that Colbert and his accomplice entered into commercial establishments during regular business hours with larcenous intent. The question is whether separate office areas—areas off-limits to the general public—within an establishment are to be considered an undivided part of that commercial establishment under section 459.5, or are those areas to be treated separately? In other words, by crossing the threshold into these office areas did Colbert and his accomplice exit the "commercial" part of the establishment and enter a discrete area where their thefts could not be considered shoplifting? We think they did.

"Giving the term its commonsense meaning, a commercial establishment is one that is primarily engaged in commerce, that is, the buying and selling of goods or services. That commonsense understanding accords with dictionary definitions and other legal sources. (Webster's 3d New Internat. Dict. (2002) p. 456 ['commercial' means 'occupied with or engaged in commerce' and 'commerce' means 'the exchange or buying and selling of commodities esp. on a large scale']; The Oxford English Reference Dict.

subdivision (e)(2)(C)(iv) or for an offense that requires registration under section 290, subdivision (c). (§ 1170.18, subd. (i).) It is undisputed that these provisions do not apply to Colbert.

5

(2d ed. 1996) p. 290 [defining 'commerce' as 'financial transactions, esp. the buying and selling of merchandise, on a large scale']; Black's Law Dict. (10th ed. 2014) p. 325 ['commercial' means '[o]f, relating to, or involving the buying and selling of goods; mercantile']; see 37 C.F.R. § 258.2 (2015) [copyright regulation defining the term 'commercial establishment' as 'an establishment used for commercial purposes, such as bars, restaurants, private offices, fitness clubs, oil rigs, retail stores, banks and financial institutions, supermarkets, auto and boat dealerships, and other establishments with common business areas']; Gov. Code, § 65589.5, subd. (h)(2)(B) [defining 'neighborhood commercial' land use as 'small-scale general or specialty stores that furnish goods and services primarily to residents of the neighborhood']; *People v. Cochran* (2002) 28 Cal.4th 396, 404-405 [quoting dictionary definition of commerce, ' "[t]he buying and selling of goods, especially on a large scale," ' in interpreting statutory phrase 'commercial purpose'].)" (*In re J.L.* (2015) 242 Cal.App.4th 1108, 1114.)

The office areas from which Colbert and his accomplice stole money were not areas in which goods were bought and sold. There was no merchandise offered for sale in those offices, or at least there is no evidence in the record suggesting there was. Colbert was not interested in stealing the goods on offer in these establishments, otherwise he and his accomplice would have remained in the area where those goods were displayed rather than intruding into the private areas where the employees were likely to keep their personal belongings, such as purses and wallets, and where the business was likely to store larger amounts of cash.

Based on this finding, we need not address the alternative basis for the trial court's denial of Colbert's petition, i.e., that Colbert intended to take property valued in excess of $950. Assuming we needed to reach the issue, however, we think the trial court's finding on this question is not supported by the limited evidence available. It is true that the

6

actual amount Colbert was able to take was less than $950 in three of the four counts.[5] The most that can said about Colbert's intent is that he and his accomplice intended to take whatever they could, of whatever value, from the offices they entered.   There is no evidence that property valued in excess of $950 was customarily present in those back rooms, let alone that Colbert or his accomplice believed that to be the case.  It was therefore a matter of circumstance, not intent, which dictated the value of the property taken.

## III.    DISPOSITION

The order denying the petition for resentencing is affirmed.

---

[5] To recap, in count 1, $300 was taken.  In count 2, Colbert and his accomplice made off with approximately $318.  In count 4, they took nothing, but only because the cashier walked into the back office and interrupted Colbert's accomplice.

_____
                        Premo, J.

I CONCUR:

_____
            Grover, J.

People v. Colbert
H042499

RUSHING, P.J., Dissenting

I respectfully dissent. In my view, Colbert's conduct constituted shoplifting under the plain language of Penal Code section 459.5. Because Colbert has established his eligibility for resentencing under Proposition 47, I would reverse the trial court's order denying the petition.

In each of the four offenses, Colbert and his companion entered a commercial establishment during business hours. They employed the same modus operandi in each instance: While Colbert distracted the store clerk, Colbert's companion snuck into a back office to steal cash. In count 1, the companion stole about $300 in cash at a gas station. In count 2, he stole about $316 in cash at a 7-Eleven convenience store. In count 3, he stole more than $3,000 in cash at another 7-Eleven.[1] In count 4, also at a 7-Eleven, he was interrupted before he could take anything.

Shoplifting is defined as "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." (Pen. Code, § 459.5, subd. (a).) There is no dispute that each of the four offenses occurred at a "commercial establishment"—e.g., a gas station and three convenience stores. There is also no dispute that Colbert and his companion entered the establishments during business hours.

The majority nonetheless reasons that Colbert and his companion did not commit shoplifting because in each instance the companion entered a private back office area to take the property. The majority concludes that, by entering a private office, Colbert and his companion exited the commercial part of the establishment and entered a discrete area.

---

[1] Because the value of the cash stolen in count 3 exceeded $950, Colbert does not contend this count constituted shoplifting.

I respectfully disagree. Under the plain language of the statute, a defendant commits shoplifting as soon as he or she enters a commercial establishment with the requisite intent. As evidenced by their modus operandi, it is obvious both Colbert and his companion had the intent to commit larceny as soon as they set foot in each establishment. At that point, the offense of shoplifting was complete. Whatever they did after entering the establishment was relevant only insofar as it revealed their preexisting intent to commit larceny. Nothing in the statute or any other authority cited by the majority defines a "commercial establishment" to exclude nonpublic areas of the structure in question. And I do not think a defendant can "exit" an establishment by entering an office inside it.

The Second District Court of Appeal recently considered this issue in *People v. Hallam* (2016) 3 Cal.App.5th 905. Hallam stole an air compressor from an employee rest room at a computer store. After pleading no contest to commercial burglary, he petitioned under Proposition 47 to designate the conviction as misdemeanor shoplifting. The trial court denied the petition for resentencing on the ground that Hallam did not enter into an area of a commercial establishment to which the public has access and where merchandise is sold. The court of appeal reversed, holding that "we find no indication that shoplifting can occur only in specific areas of a commercial establishment. Nor does there appear any requirement that the business's commercial activity must be taking place in the area from which the theft occurs in order to qualify the offense as shoplifting. The trial court thus added an element to the offense that is absent from the plain language of the statute itself when it determined that appellant's theft would qualify as shoplifting only if it occurred in an area of the commercial establishment open to the public where merchandise is sold." (*Id.* at p. 912.) I find this reasoning persuasive and squarely on point with the facts of this case.

The trial court here also ruled that the offenses did not constitute shoplifting based on a finding that Colbert intended to take more than $950 from each establishment. But

2

the statute sets the threshold at "the value of the property that is taken or intended to be taken . . . ." (Pen. Code, § 459.5, subd. (a).) This language sets the threshold at the objective value of the targeted property, not some subjective dollar amount in the defendant's mind. This makes sense because the defendant may have no specific monetary value in mind. Here, for example, Colbert and his companion apparently intended to take whatever cash they could find, regardless of whether it was $300 or $3,000. With the exception of count 3, I see no evidence that the property they intended to take was valued at more than $950. Because the value of the stolen property in counts 1 and 2 fell within the $950 limit, I conclude those offenses constituted shoplifting.

Accordingly, I would reverse the order denying the petition and remand for further proceedings to determine Colbert's eligibility on count 4 and his risk of danger to public safety.

_____
RUSHING, P.J.

*People v. Colbert*
**H042499**

3

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 206805 |
| Trial Judge: | Hon. Linda R. Clark |
| Counsel for Plaintiff/Respondent:<br>The People | Kamala D. Harris<br>Attorney General<br><br>Gerald A. Engler<br>Chief Assistant Attorney General<br><br>Jeffrey M. Laurence<br>Senior Assistant Attorney General<br><br>René A. Chacon<br>Supervising Deputy Attorney General<br><br>Victoria Ratnikova<br>Deputy Attorney General |
| Counsel for Defendant/Appellant:<br>Mark Anthony Colbert | Under appointment by the Court of Appeal<br>Kimberly Taylor |

People v. Colbert
H042499