Filed 9/4/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>OSTON G. OSOTONU,<br><br>　　Defendant and Appellant. | A147060<br><br>(Solano County Super. Ct.<br>No. FC44975) |

The trial court denied the Proposition 47 petition for resentencing brought by defendant and appellant Oston G. Osotonu (Osotonu) pursuant to Penal Code section 1170.18.[1]  Specifically, the court concluded that Osotonu's second degree burglary conviction (§ 459) for using explosives to blow open an ATM machine in the middle of the night could not be recast as the lesser offense of shoplifting, which is defined as "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours."  (§ 459.5).  We disagree and therefore reverse.

## I.  BACKGROUND

In October 1996, Osotonu and several alleged co-conspirators were charged by indictment out of the Solano County Superior Court with 20 counts, including 3 counts of second degree burglary (§ 459), six counts of possession of a destructive device near certain places (former § 12303.2; see § 18715), five counts of sale or transportation of a destructive device (former § 12303.6; see § 18730), one count of attempted use of a destructive device (§ 664; former § 12303.3; see § 18740), two counts of terrorizing

---

[1] All statutory references are to the Penal Code unless otherwise specified.

1

(§ 11413), two counts of use of a destructive device to destroy property (former § 12303.3; see § 18740), and one count of conspiracy to commit a crime (§ 182, subd. (a)(1)). In July 2000, Osotonu entered a no contest plea to 17 of the 20 counts and admitted a prior conviction. The next month, pursuant to stipulation, the trial court sentenced him to 26 years in state prison.

Thereafter, in October 2015, Osotonu filed the instant petition, asking the trial court to recall his three convictions for second degree burglary and resentence him to misdemeanor shoplifting. Only one of those three convictions—that involving count 10—is at issue in this appeal. The Solano County District Attorney's opposition to the petition describes the incident underlying the relevant offense as follows: "With respect to the burglary in Count 10, on January 26, 1997, a bomb exploded at the Wells Fargo Bank/ATM machine on Tennessee Street in Vallejo at approximately 2:50 a.m. The eastside of the bank was damaged and a portion of the ATM machine was blown apart. The steel frame of the ATM machine was located in a nearby parking lot and there was a crater in the cement wall near the machine." Reportedly, the ATM was targeted as part of a larger scheme to help a co-defendant "destroy the evidence in [that co-defendant's] criminal case by means of an explosion." According to Osotonu, he agreed to participate in the ATM crime with the intent "to create a diversion and to get money."

At the November 2015 hearing on Osotonu's petition, the trial court denied the petition as to count 10, stating: "[I]t does not appear to the Court that the ATM outside the building is a burglary of a commercial building, a bank." After Osotonu's attorney argued that the entry into the ATM in an attempt to get the money was "obviously attempted larceny," the trial court countered: "But these aren't open business hours. That's why they blew it up." Osotonu's attorney, however, asserted that "for the purpose of this individual analysis of the ATM, since the ATM is presumably a 24-hour operating machine, . . . [a]s long as the ATM is working, the business is open; and for that reason, all of the elements are met for a shoplifting." Calling this "an interesting theory," and stating that Osotonu's attorney should "certainly feel free" to appeal the matter, the trial

2

court reiterated its denial of the recall petition. Osotonu timely appealed, and the matter is now before this court for decision.

## II. DISCUSSION

In November 2014, California voters approved Proposition 47, the Safe Neighborhoods and Schools Act. Proposition 47 added section 1170.18, which provides that any defendant currently "serving a sentence for a conviction . . . of a felony or felonies who would have been guilty of a misdemeanor under [Proposition 47] had [it] been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing." (§ 1170.18, subd. (a); see Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 14, pp. 73-74.) Pertinent to this case, Proposition 47 added section 459.5 which establishes the offense of shoplifting, defined as "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." (§ 459.5, subd. (a); see *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091.) In essence, this new offense displaces the crime of burglary for many commercial thefts that do not exceed the $950 statutory ceiling. (§ 459.5, subd. (a); *id.*, subd. (b) [requiring any act defined as shoplifting pursuant to section 459.5 to be charged as shoplifting]; see also § 459 [defining burglary as entry into a "building . . . with intent to commit grand or petit larceny or any felony"].) Pursuant to section 459.5, shoplifting is punishable as a misdemeanor unless a defendant has previously been convicted of one or more specified offenses. (§ 459.5, subd. (a).)

Here, the trial court denied Osotonu's petition because it concluded that an ATM on the exterior of a bank building is not a "commercial establishment" for purposes of resentencing pursuant to section 459.5. It further opined that theft from an ATM at a time when the bank, itself, was not open, failed to meet the "regular business hours" requirement of the shoplifting statute. We review the interpretation of a statute independently. (*People v. Smith* (2016) 1 Cal.App.5th 266, 271 (*Smith*).) Moreover,

3

" '[i]n interpreting a voter initiative like [Proposition 47], [the courts] apply the same principles that govern statutory construction.' " (*Ibid.*)  Thus, under both scenarios, our primary mandate is to effectuate the intent of the enacting body.  (*People v. Gonzales* (2017) 2 Cal.5th 858, 868 (*Gonzales*) [" '[i]n construing constitutional and statutory provisions, whether enacted by the Legislature or by initiative, the intent of the enacting body is the paramount consideration' "].)  Based on our de novo review of section 459.5, we conclude that the trial court's restrictive construction of the statute cannot stand.

Our Supreme Court recently opined that, by providing a specific definition of the term "shoplifting," section 459.5 created "a term of art, which must be understood as it is defined not in its colloquial sense." (*Gonzales*, *supra*, 2 Cal.5th at p. 871.)  In this regard, our colleagues in Division One of this Appellate District considered at length the appropriate definition of  "commercial establishment" for purposes of section 459.5, and concluded that  " 'commercial establishment' within the meaning of section 459.5 means a business that is primarily engaged in the buying and selling of goods or services regardless of whether these goods or services are sold to members of the general public." (*People v. Holm* (2016) 3 Cal.App.5th 141, 148 (*Holm*) [private country club is a commercial establishment under the shoplifting statute]; see also *In re J.L.* (2015) 242 Cal.App.4th 1108, 1114 [adopting "commonsense meaning" of commercial establishment as "one that is primarily engaged in commerce, that is, the buying and selling of goods and services"; under this definition a public high school is not a "commercial establishment"]; *Smith*, *supra*, 1 Cal.App.5th at pp. 272-273 [check-cashing business is "commercial establishment"].)  We agree with the *Holm* court's formulation of the definition of commercial establishment, and adopt it here.

Pursuant to this stated definition, a bank clearly qualifies as a commercial establishment for purposes of section 459.5.  In fact, in *People v. Hudson* (2016) 2 Cal.App.5th 575, 579-583, review granted Oct. 26, 2016, S237340, the court reached this exact result, reasoning that "[b]ecause 'commercial' involves being engaged in commerce, including financial transactions, we conclude that the term 'commercial establishment' includes a bank." (*Id. at p*. 582.)  While the court acknowledged "a

4

common understanding of the word 'commercial' encompasses the buying and selling of merchandise in a retail establishment," it went on to observe "nothing in the text of [Proposition 47] supports this narrow interpretation and we reject it." (*Ibid.*; accord *People v. Abarca* (2016) 2 Cal.App.5th 475, 480-483, review dismissed June 28, 2017, S237106 [bank is "commercial establishment"].) Indeed, in *Gonzales*, the Supreme Court recently concluded that the "act of entering a bank to cash a stolen check for less than $950, traditionally regarded as a theft by false pretenses rather than larceny, now constitutes shoplifting" pursuant to section 459.5. (*Gonzales*, *supra*, 2 Cal.5th at p. 862.) Although the high court did not directly address the definition of commercial establishment in *Gonzales*, its analysis is necessarily predicated upon the presumption that a bank qualifies as such.

Thus, the only question here is whether an ATM attached to the external wall of a bank should be considered part of the commercial establishment of the bank and/or a commercial establishment in its own right. We conclude that both can be correct based on the facts of a particular case. Patrons utilizing an ATM are clearly engaged in commerce, in particular financial transactions, in a way that is indistinguishable from the commercial activities of those patrons who choose to go inside of the bank building and approach a bank teller or other bank employee. As one appellate court has stated in rejecting the argument that an ATM is distinguishable from a bank and therefore not a public facility for purposes of handicap access and civil rights laws: "[T]he ATM is an important adjunct to the bank and constitutes a place where specific services are provided when the main facility is closed and not open for banking business." (*Donald v. Sacramento Valley Bank* (1989) 209 Cal.App.3d 1183, 1194 (*Donald*); see also *People v. Ravenscroft* (1988) 198 Cal.App.3d 639, 641, 645 [external ATM "housed within a bank" is "an arm of that bank building"] (*Ravenscroft*), disapproved on other grounds as stated in *People v. Davis* (1998) 18 Cal.4th 712, 722 & fn. 5 (*Davis*).) We therefore have little difficulty holding that an ATM is a commercial establishment for purposes of section 459.5.

Indeed, the trial court's concern in this case appears to stem more from the location of the ATM *outside* of the bank building, rather than from its belief that an ATM is not a place where commercial transactions take place. As noted above, in denying Osotonu's resentencing petition, the court stated: "It does not appear to the Court that the ATM outside the building is a burglary of a commercial building, a bank." We view this as a concern that stealing from an external ATM fails to constitute a sufficient *entry* into a building to support a conviction for burglary or, by analogy, the new crime of shoplifting defined by section 459.5. (See § 459 [defining burglary as *entry* into a "building . . . with intent to commit grand or petit larceny or any felony"]; § 459.5 [defining shoplifting as "*entering* a commercial establishment with intent to commit larceny while that establishment is open during regular business hours," italics added].)

In *Gonzales*, the Supreme Court opined that the drafters of Proposition 47 "clearly had burglary in mind when defining 'shoplifting' " and thus the fact that "the shoplifting statute expressly mentions the burglary statute and uses the same term, 'larceny,' makes plain that the electorate intended 'larceny' to have the same meaning in both provisions." (*Gonzales*, *supra*, 2 Cal.5th at p. 869.) Under similar logic, it appears that the "entry" required to support a shoplifting conviction should be the same "entry" that justifies a burglary charge. In *Davis*, the Supreme Court reviewed the types of "entry" the burglary statute was intended to prevent, and concluded: "We agree that a burglary may be committed by using an instrument to enter a building—whether that instrument is used solely to effect entry, or to accomplish the intended larceny or felony as well. Thus, using a tire iron to pry open a door, using a tool to create a hole in a store wall, or using an auger to bore a hole in a corn crib is a sufficient entry to support a conviction of burglary." (*Davis*, *supra*, 18 Cal.4th. at pp. 717-718; see also *id.* at p. 716 [describing case where the defendant bored a hole through the floor of a corn crib and caught the shelled corn in a sack as it flowed through the hole as sufficient to support a burglary charge].)

The *Davis* court, however, went on to decide that "[i]nserting a stolen ATM card into an ATM, or placing a forged check in a chute in the window of a check-cashing

6

facility, is not using an instrument to effect an entry within the meaning of the burglary statute.  Neither act violates the occupant's possessory interest in the building as does using a tool to reach into a building and remove property.  It is true that the intended result in each instance is larceny.  But the use of a tool to enter a building, whether as a prelude to a physical entry or to remove property or commit a felony, breaches the occupant's possessory interest in the building.  Inserting an ATM card or presenting a forged check does not." (*Davis*, *supra*, 18 Cal.4th at p. 722.)  This holding is directly contrary to the result reached in *Ravenscroft*, which determined that the insertion of an ATM card into an ATM, mounted inside of the bank and secured flush with the exterior walls of the bank, "constitutes a sufficient entry of a building to support a conviction for burglary." (*Ravenscroft*, *supra*, 198 Cal.App.3d at p. 641.)  *Davis* recognized as much, disapproving the decision in *Ravenscroft* "to the extent it is inconsistent with our holding." (*Davis*, at p. 722, fn. 5.)  Interestingly for our purposes, however, the *Davis* court further stated:  "We do not disapprove the other aspects of the decision in *Ravenscroft*, including its conclusion that the ATM card in that case was inserted into the airspace of the ATM." (*Ibid.*; see *Ravenscroft*, at p. 643 [holding that "[t]he insertion of an ATM card to effectuate larcenous intent is no less an entry into the air space of a bank as would be the use of any other tool or instrument"].)  Whatever the wisdom of the distinction made by the *Davis* court, the clear implication of its analysis is that an entry into an external ATM through use of an instrument constitutes sufficient "entry into a building" to support a burglary (and by implication a shoplifting) conviction if use of that instrument "violates the occupant's possessory interest in the building as does using a tool to reach into a building and remove property." (*Davis*, at p. 722.)  Here, the use of dynamite as an instrument which blew apart the ATM to the extent that its steel frame was found in a nearby parking lot, and which therefore presumably allowed residue from that dynamite to penetrate the ATM's outer boundary, was sufficient to violate the bank's possessory interest in its building. (See *Magness v. Superior Court* (2012) 54 Cal.4th 270, 275 [approving jury instruction "that ' "[u]nder the law of burglary, a person enters a building if some part of his . . . body or some object under his control penetrates the

7

area inside the building's outer boundary" ' "]; *id.* at pp. 279-280 ["something outside must go inside for an entry to occur"].) Thus —although perhaps not a classic example of shoplifting as that term is understood in a colloquial sense—we have no difficulty concluding that the breach of the ATM in this case constituted a sufficient entry into a commercial establishment for purposes of section 459.5. (Cf. *Gonzales*, *supra*, 2 Cal.5th at p. 871 [shoplifting statute creates a term of art].)

Moreover, we believe that this construction of section 459.5 is consistent with the purposes underlying Proposition 47. As the *Holm* court asserted in a related context: "Proposition 47 specifies '[t]his act shall be liberally construed to effectuate its purposes.' (2014 Voter Guide, *supra*, text of Prop. 47, § 18, p. 74.) Given that these purposes include reducing felonies to misdemeanors for nonserious nonviolent offenses and reducing the costs associated with felony incarcerations, it would be *in*consistent with the purposes of this legislation to narrowly construe the pivotal term 'commercial establishments.' "[2] (*Holm*, *supra*, 3 Cal.App. 5th at p. 148.) Further, in *Gonzales*, the Supreme Court considered the electorate's intent in adopting Proposition 47 and concluded that it was the *value of the property stolen* with which the electorate was concerned for purposes of differentiating between felonies and misdemeanors, not the type of theft involved. (*Gonzales*, *supra*, 2 Cal.5th at p. 870 [the electorate "set the amount at issue as the demarcation between felonies and misdemeanors"]; *id*. at p. 874 ["The degree of culpability can reasonably be linked to the value of property stolen, regardless of the technique employed. In each case, the thief has a specific intent to steal"]; see also § 490.2, subd. (a) ["obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty

---

[2] We recognize that the explosion of the ATM in this case is difficult to characterize as either nonserious or nonviolent. Indeed, Osotonu was also convicted and is serving time for use of a destructive device to destroy property (former § 12303.3; see § 18740) based on this underlying event. Here, however, we are solely concerned with whether Osotonu's second degree burglary conviction arising out of the same incident— sentencing for which was stayed pursuant to section 654—meets the statutory criteria for shoplifting.

8

dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor."].) We similarly see no reason why the electorate would differentiate between money stolen from an ATM and money obtained illegally from a bank teller for purposes of Proposition 47 relief, as it is the value of the stolen property, not its location within the commercial enterprise, to which the electorate has attached significance. (Cf. *Holm*, at pp. 144, 148 [television stolen from private golf club falls within the purview of the shoplifting statute].)

In reaching this conclusion, we are not swayed by the Attorney General's argument that while "the outside of an operating ATM may be very similar to the inside of [a] bank that is open for business," the inside of an ATM is never open to the public and thus entry into it cannot be deemed entry into a commercial establishment. We are aware that the Supreme Court is currently considering a case involving the possible distinction between commercial and non-commercial spaces within an establishment for purposes of section 459.5. (See *People v. Colbert* (2016) 5 Cal.App.5th 385, review granted Feb. 15, 2017, S238954 (*Colbert*) [identifying issue on review as whether a defendant's entry into a separate office area of a commercial establishment that was off-limits to the general public constitutes an "exit" from the "commercial" part of the establishment that precluded reducing his conviction for second degree burglary to misdemeanor shoplifting under Penal Code section 459.5].) However, we do not find the *Colbert* situation particularly analogous to the case at hand. Rather, we consider the Fifth District's recent opinion in *People v. Bunyard* (2017) 9 Cal.App.5th 1237 (*Bunyard*) instructive.

In *Bunyard*, the defendant seeking resentencing had been convicted of second degree burglary after he attempted to break into a coin-operated soap dispenser in a 24-hour commercial laundromat. (*Bunyard*, *supra*, 9 Cal.App.5th at pp. 1240, 1244.) The trial court determined that such conduct did not "comport with the commonsense meaning of 'shoplifting' " and thus denied the defendant's resentencing petition. (*Id.* at pp. 1239-1240.) The appellate court reversed, concluding that when the defendant entered the laundromat during its regular business hours with the intent to commit

9

larceny by theft he met the statutory definition of shoplifting. (*Id.* at p. 1244.) In making this determination, the court held that it did not matter whether the defendant "used a tool to effectuate the intended theft or force to attempt to break into the coin box." (*Id.* at p. 1244.) Rather, it concluded that the electorate did not intend section 459.5 to cover "*only* the theft of merchandise or goods displayed for sale," opining: "It would make no sense to distinguish, for purposes of misdemeanor versus felony treatment, between the intended theft of merchandise worth $10 to $15 and the intended theft of coins worth $10 to $15, simply because the former is openly displayed and offered for sale and the latter is not." (*Id.* at p. 1245.) Similarly, in this case, the fact that the money sought was located inside of the ATM is of no moment where the commercial establishment was entered with the requisite intent. (See *Ravenscroft*, *supra*, 198 Cal.App.3d at p. 644 ["[t]he gravamen of burglary is an act of entry, no matter how partial or slight it may be, . . . accompanied by the proper intent"]; see also *Davis*, *supra*, 18 Cal.4th at p. 715; *Colbert*, *supra*, 5 Cal.App.5th at p. 392 (dis. opn. of Rushing, P.J.) [under "plain language" of section 459.5, "a defendant commits shoplifting as soon as he or she enters a commercial establishment with the requisite intent"].)[3]

As a final matter, we conclude—again based upon our consideration of the electorate's objectives, as well as the need to broadly construe section 459.5 in order to effectuate its underlying purposes—that an ATM's "regular business hours" for purposes

---

[3] We are not unsympathetic to the Attorney General's argument that characterizing the instant offense as shoplifting expands that term far beyond its commonly understood meaning. Were we drafting section 459.5 to more closely resemble the crime of shoplifting as it is conventionally understood, we might have limited its application to only nonviolent entries into commercial establishments and/or to thefts solely of retail merchandise. But these limitations might very well have excluded from resentencing many nonserious burglaries that the electorate would otherwise have chosen to reach, as the developing caselaw has illustrated. And, in any event, where such concepts are not included in the statutory language as it was enacted, we cannot add them by judicial fiat. (See *Gonzales*, *supra*, 2 Cal.5th at p. 871 [when construing a term of art, courts must assume that the electorate was aware of the ramifications of its choice of language]; *id.* at p. 874 [noting that section 490.5 limits its scope to petty theft of retail merchandise, while section 459.5 contains no such limiting language].)

of the shoplifting statute are not necessarily the "banker's hours" associated with its affiliated financial institution. As stated above, an ATM is useful precisely because it "constitutes a place where specific services are provided when the main facility is closed and not open for banking business." (*Donald*, *supra*, 209 Cal.App.3d at p. 1194.) Thus, even when the bank, itself, is closed to the public, many ATMs are still engaged in active commerce. While some may be located inside banks or other commercial establishments with more restricted business hours, many are open and available for the business of financial transactions 24 hours a day. Where the offense at issue otherwise falls below the statutory ceiling of $950 (§ 459.5), we can discern no meaningful distinction between theft from an ATM that is open after formal banking hours and one that it only open during the bank's normal business day for purposes of applying Proposition 47. We therefore reach the rather unremarkable conclusion that an ATM's "regular business hours" for purposes of section 459.5 are those hours during which the ATM, itself, is open for business.

The Attorney General, however, asserts that a petitioner bears the burden of showing eligibility for resentencing under Proposition 47 and that Osotonu failed to establish that the ATM he burglarized in this case was indeed a 24-hour enterprise. (See *People v. Sherow* (2015) 239 Cal.App.4th 875, 880.) In this regard, we note that Osotonu's resentencing petition alleges that he is eligible for Proposition 47 relief, and the District Attorney did not raise the 24-hour issue in the court below. Indeed, at the resentencing hearing, Osotonu's attorney argued that the ATM was "presumably a 24-hour operating machine," and the District Attorney did not challenge this point. While there is evidence in the record which suggests that the ATM, being an externally mounted machine, was accessible to the public at all hours, it is clear that the trial court did not resolve this and other eligibility issues because it believed that Osotonu's petition was legally barred for the reasons discussed herein. Under such circumstances, the proper remedy is to reverse the order denying relief and remand the matter to the trial court to determine whether Osotonu satisfies the remaining conditions for resentencing. (*Smith*, *supra*, 1 Cal.App.5th at p. 275.)

11

In sum, because we conclude in this case that Osotonu entered the ATM at issue with the intent "to get money" and that an ATM is "open during regular business hours" for purposes of section 459.5 when it is available to the public for the provision of financial services, we remand to the trial court to determine whether resentencing is appropriate under the specific facts of this case.

## III. DISPOSITION

The order denying defendant's petition for recall of sentence and request for resentencing is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

12

_____

REARDON, J.

We concur:

_____

STREETER, ACTING P. J.

_____

SMITH, J.*

*Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A147060 *People v. Osotonu*

13

Trial Court:

Solano County Superior Court


Trial Judge:

Hon. Peter B. Foor


Counsel for Defendant and Appellant:

Carla Castillo, First District Appellate Project

Shannon Chase, First District Appellate Project


Counsel for Plaintiff and Respondent:

Kamala D. Harris, Attorney General

Gerald A. Engler, Chief Assistant Attorney General

Jeffrey M. Laurence, Senior Assistant Attorney General

René A. Chacón, Supervising Deputy Attorney General

Bruce Ortega, Deputy Attorney General